IN THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| DEWBERRY ENGINEERS INC., )<br>a New York corporation, )<br> )<br>     Plaintiff, )<br> )<br>v. )<br> )<br>DEWBERRY GROUP, INC., )<br>f/k/a DEWBERRY CAPITAL )<br>CORPORATION, )<br>a Georgia corporation, )<br> )<br>     Defendant. )<br>_____) | Civil Action No. 1:20-cv-610 |

## COMPLAINT

The Plaintiff, Dewberry Engineers Inc. ("Dewberry"), files this Complaint against the

Defendant, Dewberry Group, Inc., formerly known as Dewberry Capital Corporation

("DCC"), for acts of: (1) federal trademark infringement in violation of Section 32(1) of the

Lanham Act, 15 U.S.C. § 1114(1); (2) federal unfair competition in violation of Section

43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) common law trademark infringement in

violation of Virginia law; (4) common law unfair competition in violation of Virginia law;

and (5) breach of a written settlement agreement resolving prior litigation between the

parties.

## Introduction

1.    Dewberry is a nationally recognized firm headquartered in Fairfax, Virginia,

with 50 offices in 18 different states, and registered to do business in all 50 states plus the

District of Columbia, U.S. Virgin Islands, and Puerto Rico. It provides services in a variety of fields, including architecture, many different types of engineering, land planning, land design, land surveying, landscape architecture, interior design, road and bridge design, other transportation design, water and waste water treatment plants, flood plain mapping, disaster recovery, and other services related to the use and development of real estate. Dewberry has over 2,000 employees nation-wide, with gross revenues of more than $470 million in 2019.

2.      Dewberry brings this action to protect one of its most valuable assets: (a) its distinctive and well-known DEWBERRY name, (b) the registered DEWBERRY® word mark, and (c) the registered DEWBERRY and berry design® mark (collectively, the "DEWBERRY® Marks"). Dewberry and its predecessors have used and promoted the DEWBERRY® Marks in commerce for over 50 years.  The DEWBERRY® Marks are the subject of two registrations with the United States Patent & Trademark Office ("USPTO").

3.      Through years of successful use and promotion, the DEWBERRY® Marks have come to symbolize Dewberry, its considerable goodwill, and the quality of the services it provides.

4.      Dewberry is forced to seek relief from this Court because its longstanding DEWBERRY® Marks have once again come under attack by DCC.

5.      DCC is infringing the DEWBERRY® Marks by: (1) adopting four closely similar marks, namely, D DEWBERRY GROUP with stylized capital letter D encircled to the left (the "Group Mark"), D DEWBERRY OFFICE with stylized capital letter D encircled to the left (the "Office Mark"), D DEWBERRY LIVING with stylized capital letter D encircled to the left (the "Living Mark"), and STUDIO Dewberry (stylized) (the "Studio Mark"), and the word form counterparts of these four marks (collectively, the "Infringing

Marks"); (2) using the Infringing Marks to promote real estate services; and (3) expanding under the Infringing Marks into Virginia.

6.      DCC is breaching a Confidential Settlement Agreement (the "Settlement Agreement") entered by the parties in 2007 in resolution of an earlier trademark litigation by: (1) using the Group Mark, the Living Mark, and the Studio Mark in Virginia; and (2) using the Studio Mark in connection with architectural services in the United States.

7.      DCC's use and attempted expansion under the Infringing Marks infringe the DEWBERRY® Marks, and this threatens the reputation and goodwill that Dewberry has built up in its mark for over half a century.

8.      In fact, DCC's use of the Infringing Marks has caused and is causing actual confusion between DCC and Dewberry and its DEWBERRY® Marks.

9.      In light of Dewberry's decades-long priority with respect to its DEWBERRY® Marks, DCC is infringing Dewberry's registered DEWBERRY® Marks, and DCC should be enjoined from any further infringement.

## <u>The Parties</u>

10.      Dewberry is a New York corporation qualified to transact business in Virginia with its principal place of business in Fairfax, Virginia.

11.      DCC is a Georgia corporation with its principal place of business in Atlanta, Georgia. DCC was known as "Dewberry Capital Corporation" from 1989 until April 26, 2019, when DCC changed its name to "Dewberry Group, Inc."

**Jurisdiction and Venue**

12.     This Court has jurisdiction over Counts I and II of this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b), and pursuant to 15 U.S.C. § 1121. Counts I and II state claims for federal trademark infringement and unfair competition under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a). This Court has supplemental jurisdiction over Counts III, IV, and V of this Complaint pursuant to 28 U.S.C. § 1138(b) and the principles of supplemental jurisdiction as expressed in 28 U.S.C. § 1367. Counts III and IV state claims for common law trademark infringement and unfair competition under Virginia law, and Count V states a claim for breach of the Settlement Agreement. Further, section 24 of the Settlement Agreement states that the exclusive jurisdiction and venue for future disputes between the parties, including any dispute concerning the Settlement Agreement, is the United States District Court for the Eastern District of Virginia (Alexandria Division).

13.     Venue in this District and Division is proper under 28 U.S.C. §§ 1391(b), 1400(a) and 1400(b) because Dewberry is a corporation headquartered in Fairfax, Virginia, DCC is subject to personal jurisdiction here, and a substantial part of the events giving rise to Dewberry's claims occurred here, and because venue in this District and Division is mandated by section 24 of the Settlement Agreement.

**Facts Common to All Counts**

**(Dewberry and Its DEWBERRY Name and DEWBERRY® Marks)**

14.     Sidney O. Dewberry, the founder and chairman emeritus of Dewberry, has worked in the fields of land development and engineering since the early 1950s.

4

15.     On April 13, 1956, in Arlington, Virginia, Mr. Dewberry launched the company that is now Dewberry. The company was initially known as GREENHORNE, O'MARA, DEWBERRY & NEALON.

16.     In 1968, due in part to Mr. Dewberry's prominence and reputation in the field, the company changed its name from GREENHORNE, O'MARA, DEWBERRY & NEALON to DEWBERRY, NEALON & DAVIS.

17.     In 1981, the company changed its name from DEWBERRY, NEALON & DAVIS to DEWBERRY & DAVIS.

18.     In the following years, the company changed its name from DEWBERRY & DAVIS to DEWBERRY & DAVIS LLC, then to DEWBERRY CONSULTANTS LLC.

19.     As of the end of 2017, Dewberry Consultants LLC merged into Dewberry Engineers Inc., with Dewberry Engineers Inc. as the surviving business entity.

20.     Since 1981, the company -- including related entities in the Dewberry family and under common ownership and control with Dewberry -- has provided professional services and traded under a number of service marks, trade names, and corporate names, including all of the following:

> DEWBERRY
>
> DEWBERRY ENGINEERS
>
> DEWBERRY CONSULTANTS
>
> THE DEWBERRY COMPANIES
>
> THE DEWBERRY COMPANIES INC.
>
> THE DEWBERRY COMPANIES LC
>
> DEWBERRY DESIGN GROUP INCORPORATED

DEWBERRY INTERNATIONAL, INC.

DEWBERRY & DAVIS

DEWBERRY NEALON & DAVIS

DEWBERRY & DAVIS, INC.

DEWBERRY DESIGN GROUP INCORPORATED

DEWBERRY DESIGN-BUILDERS INC.

DEWBERRY DEL CARIBE LLC

DEWBERRY TECHNOLOGIES INC.

DEWBERRY & DAVIS ENVIRONMENTAL LABORATORY

DEWBERRY & DAVIS ENVIRONMENTAL SERVICES, INC.

DEWBERRY & DAVIS INTERNATIONAL, INC.

DEWBERRY & DAVIS RISK MANAGEMENT, INC.

DEWBERRY & DAVIS SERVICE OPERATIONS, INC.

DEWBERRY-GOODKIND, INC.

21.     In addition, beginning at least as early as 1987 and continuing to today, Dewberry has used a number of affiliated entities to provide real estate development services under a number of service marks, trade names, and corporate names, including all of the following:

DEWBERRY FAMILY LIMITED PARTNERSHIP

DEWBERRY FAMILY LLLP

DEWBERRY INVESTMENTS LLLP

DEWBERRY III LIMITED PARTNERSHIP

DEWBERRY III LLLP

DEWBERRY IV LIMITED PARTNERSHIP

DEWBERRY IV LLLP

DEWBERRY V LIMITED PARTNERSHIP

DEWBERRY V LLLP

DEWBERRY VI LLC

22.     From 1956 to the present, the one common element in all of these service marks, trade names, and corporate names has been "DEWBERRY."

23.     Beginning at least as early as 1968, "DEWBERRY" has been the first word in, and the dominant element of, all of the foregoing service marks, trade names, and corporate names.

24.     Dewberry owns a valid and subsisting federal registration (Registration No. 2,991,043), on the USPTO's Principal Register, for its DEWBERRY® word mark (the "DEWBERRY® Word Mark") for a wide variety of services in International Classes 35, 37, 40, 42, and 45, including, but not limited to, real estate development, real estate site analysis and selection, building inspection, land development, construction management and supervision, real estate inspections, environmental land inspection and building inspection, architectural design services, design-build services, feasibility studies, pre-planning studies, architectural programming, interior design and space planning, master planning, construction engineering, structural engineering, building services engineering, technical consultation and research in the field of environment and land use, floodplain mapping, urban planning, land surveying, landscape architectural design, and geospatial and mapping services. The registration was issued on September 6, 2005, based on first use of the DEWBERRY® Word Mark in connection with the extensive services recited in the application in commerce at least as early as February 5, 2003.  A copy of the USPTO's online record for Dewberry's DEWBERRY® Word Mark registration (including the complete identification of services therefor) is attached as Exhibit A.

25.     Dewberry also owns a valid and subsisting federal registration (Registration No. 2,991,044), on the Principal Register of the USPTO, for its DEWBERRY and berry design® Mark, comprised of a stylized berry with the word "Dewberry" to the right (the "DEWBERRY & Berry Design® Mark"), in the same five International Classes, and for largely the same services, as its DEWBERRY® Word Mark. The registration was issued on September 6, 2005, based on first use of the DEWBERRY® Word Mark in connection with the extensive services recited in the application in commerce at least as early as February 5, 2003.  A copy of the USPTO's online record for Dewberry's DEWBERRY & Berry Design® Mark registration (including the complete identification of services therefor) is attached as Exhibit B. As shown in Exhibit B, the design element of the DEWBERRY & Berry Design® Mark is a fanciful representation of a dewberry fruit, which capitalizes upon and reinforces the longstanding association of the Dewberry companies with the DEWBERRY® Marks.

26.     In addition, Dewberry owns a valid, subsisting, and incontestable federal registration (Registration No. 2,242,505), on the Principal Register of the USPTO, for its "dewberry" logo (the "DEWBERRY Berry Mark®") alone for a variety of services in International Class 42: engineering, architectural design for others, land surveying and landscape architectural design for others, and reviewing standards and practices to assure compliance with zoning laws and regulations. The registration was issued on May 4, 1999, based on first use of the "dewberry" logo in connection with the services recited in the application in commerce at least as early as May 1, 1980.  A copy of the USPTO's online record for Dewberry's DEWBERRY Berry Mark® registration is attached as Exhibit C.

27.      The Dewberry® Word Mark and the DEWBERRY & Berry Design® Mark are referred to collectively in this Complaint as the "DEWBERRY® Marks."

28.      Given the strong equity in its DEWBERRY name and DEWBERRY® Marks, Dewberry has also registered -- with Network Solutions, LLC, the Herndon, Virginia-based domain name registrar - - the domain name www.dewberry.com. Dewberry uses its www.dewberry.com domain name in connection with its company Internet website.

### (Dewberry's Promotion of Its DEWBERRY® Brand in Commerce)

29.      Beginning in the 1950s and continuing to the present, Mr. Dewberry and the Dewberry companies have made consistent, extensive, and prominent use of their DEWBERRY® names and marks.

30.      Dewberry has promoted its DEWBERRY® Marks and services in a wide range of media, including but not limited to signage, brochures, letterhead, mailings, proposals, contracts, business cards, newsletters, audio-visual materials, The Sidney O. Dewberry Collection of Surveying & Engineering Technology, and Dewberry's website at www.dewberry.com.

31.      The DEWBERRY® names and marks also appear on four editions of a book authored by Dewberry and entitled *Land Development Handbook: A Practical Guide to Planning, Engineering, and Surveying*. The book, published by McGraw-Hill and available on Amazon.com and elsewhere, is over 1,100 pages in length, is in its fourth edition, is a technical best-seller, and is used in a number of university courses.  Two additional works have since been added, *Development in the Built Environment* and *Construction Practices for Land Development*, creating a three-work series.

32.     In addition, the DEWBERRY® names and marks appear on a book entitled *The Dewberry Way: Celebrating 50 Years of Excellence.* The book, co-authored by Mr. Dewberry and Kathi Ann Brown, and published by Spectrum Publishing Group, Inc. of Fairfax, Virginia, recounts Dewberry's (at that time) 50-year history. The book also explains Dewberry's core principles, which are known as "The Dewberry Way."

33.     Dewberry and the DEWBERRY® names and marks have received considerable press coverage and publicity due to Dewberry's involvement in many large-scale real estate projects, development projects, and other projects around the United States, including but not limited to work for the Department of Housing and Urban Development, work for the Federal Emergency Management Agency, work for the Department of Defense, mapping work at the White House, and work on high profile developments and projects such as Pentagon City, Washington National Airport, the Dulles Greenway, and the Womack Army Medical Center at Fort Bragg, North Carolina.

**(The Success of Dewberry and Its DEWBERRY® Brand in Commerce)**

34.     Dewberry's promotion and sale of its services under its DEWBERRY® names and marks over the past five decades has been extremely successful, and the company and its DEWBERRY® brand have achieved great recognition throughout the United States.

35.     Since at least as early as the mid-1970s, Dewberry has provided its real estate and real estate-related services -- under its DEWBERRY® brand identity -- on a national basis. For example, Dewberry has provided FEMA with mapping services covering large portions of the United States; has performed many other projects for FEMA, the Department of Defense, and

other federal agencies; and has worked on other real estate-related projects in many areas of the United States.

36.     Customers for Dewberry's services have included governmental agencies at all levels, as well as corporations, real estate developers, colleges and universities, school districts, and other commercial and institutional entities.

37.     Dewberry is registered to do business in all 50 states plus the District of Columbia, U.S. Virgin Islands, and Puerto Rico, has 50 offices in 18 different states, and has more than 2,000 employees nation-wide. It had gross revenues of more than $470 million in 2019.

38.     Dewberry has consistently been ranked in the "Top 50" of more than 50,000 peer firms worldwide in *Engineering News-Record,* a leading industry publication, with a current ranking of number 36 worldwide.

39.     Dewberry, Dewberry's founder, and various entities that Dewberry has acquired have received numerous other awards and honors recognizing the excellence of their services and of their contributions.

40.     As a result of Dewberry's successful promotion and sales of services under its DEWBERRY® names and marks for several decades, the DEWBERRY® names and marks, in addition to being inherently distinctive, have acquired strong secondary meaning.

41.     Dewberry's goodwill, developed over more than 70 years, is symbolized by its DEWBERRY® names and marks. As a result, the DEWBERRY® names and marks are among the company's most valuable assets.

11

**(DCC's Prior Infringement and Resulting Litigation)**

42.     In 2006, Dewberry was forced to file a complaint against DCC for federal trademark infringement, federal unfair competition, common law trademark infringement, and common law unfair competition. *Dewberry & Davis LLC v. Dewberry Capital Corporation*, Civil Action No. 1:06cv816 (the "Prior Litigation").

43.     The Prior Litigation stemmed from DCC's two applications to register DEWBERRY CAPITAL, one for the DEWBERRY CAPITAL word mark (Application Serial No. 78/819,593) and the other for DEWBERRY CAPITAL and Design (Application Serial No. 78/819,609) with the USPTO, both filed on February 21, 2006.

44.     On March 8, 2006, DCC sent a demand letter to Dewberry, entitled "Likelihood of Confusion regarding DEWBERRY Trademarks," in which DCC stated "a likelihood of confusion or mistake exists between the parties' respective marks," that the "[l]ikelihood of confusion is demonstrated by, among other factors, the similarity of the marks at issue and the relatedness of the goods and services offered under such marks," and that the parties respective marks are "extremely similar … because of the common use of the predominant element 'Dewberry.'"  In addition, DCC stated that the parties' respective services are "legally related" and "travel in the same channels of commerce."  DCC closed its demand letter by threatening Dewberry with trademark infringement, cancellation, and opposition proceedings.

45.     When a resolution appeared unlikely, Dewberry filed its complaint in the Prior Litigation.

46.     In response to Dewberry's complaint, DCC denied Dewberry's claims and asserted its own claims for the cancellation of Dewberry's federal trademark registrations and for common law infringement, which claims Dewberry denied.

**(The Confidential Settlement Agreement)**

47.     On February 26, 2007, the parties entered into the Confidential Settlement Agreement ("Settlement Agreement") referred to above.  A copy of the Settlement Agreement is attached as Exhibit D.  Both parties agreed to voluntarily dismiss all of their claims in the Prior Litigation, and DCC agreed to (1) withdraw all pending challenges to Dewberry's federal trademark registrations, and (2) not challenge or take action against Dewberry's federal trademark registrations in the future. In addition, the Settlement Agreement included the following provisions:

a.  Paragraph B.2 – "*Except as provided in Paragraph B.3, below, DCC may use the DEWBERRY CAPITAL name and mark* in connection with its promotion, offering and performance of real estate development services as a real estate developer, including purchasing real property, arranging for the construction of commercial and residential building and mixed use properties, and leasing and managing properties." (Emphasis added).

b.  Paragraph B.3 – "*To the extent that DCC performs any present or future real estate development or related services* in the Commonwealth of Virginia, the State of Maryland, or the District of Columbia, *it shall do so only under the name and mark DCC* and not under the name or mark DEWBERRY CAPITAL." (Emphasis added).

   c.   Paragraph B.4 – "Dewberry may use its DEWBERRY marks and names at any time for any services or products it chooses throughout the United States and elsewhere."

   d.   Paragraph B.6 – "DCC will not use the word DEWBERRY in the name of, or as a mark for, any architectural and/or engineering company, or in connection with any architecture or engineering services."

   e.   Paragraph B.17 – "The parties…may disclose the terms and conditions of this Agreement to non-parties only to the extent necessary to: … (iv) prosecute or defend an action brought by or against a party to this Agreement."

   f.   Paragraph B.24 – "This Agreement shall be governed by, and construed under, the laws of the Commonwealth of Virginia, and any future dispute between the Parties, including any dispute concerning this Agreement, shall be submitted to the United States District Court for the Eastern District of Virginia (Alexandria Division)."

48.     Noticeably absent from the Settlement Agreement is any language permitting DCC to use any mark other than DEWBERRY CAPITAL or DCC. To wit:

   a.   Dewberry did not permit DCC to use DEWBERRY GROUP, DEWBERRY OFFICE, DEWBERRY LIVING, or STUDIODEWBERRY.

   b.   Dewberry did not permit DCC to use DEWBERRY in any way other than the ways specifically described in Paragraph B2.

14

The only manner in which Dewberry permitted DCC to use DEWBERRY was specifically the "DEWBERRY CAPITAL" name and mark described in Paragraph B2 of the Settlement Agreement.

49.     Dewberry compromised, in good faith, to permit DCC limited continued use of the specific DEWBERRY CAPITAL mark that it had been using before the litigation outside the Virginia, Maryland, and District of Columbia area because the CAPITAL component of that mark connotes financial-related services and thus serves to differentiate the two companies and the services they offer. Dewberry did not agree, and would not have agreed, to DCC's use of DEWBERRY by itself or with a range of other words that may not differentiate the two companies and their services well enough to avoid a likelihood of confusion.

**(DCC's Current Infringement of the DEWBERRY® Names and Marks)**

50.     Although DCC, either through "Dewberry Capital Corporation" or "Dewberry Group, Inc.," is not authorized by the Virginia State Corporation Commission to transact business in Virginia as of the date of filing this action, DCC is nonetheless using the Group Mark, the Living Mark, and the Studio Mark in connection with a hotel development project in Charlottesville, Virginia. A printout of a newspaper article with depiction of an artist's rendering submitted to the Charlottesville Board of Architectural Review in 2018 is attached as Exhibit E.

51.     At some point between August 2018 and January 2019, DCC launched a new website, www.dewberrygroup.com, which uses DEWBERRY CAPITAL and its column design as the primary branding.  Instead, the Group Mark, the Office Mark, the Living Mark,

the Studio Mark, and their word mark counterparts are used as the primary branding and the primary means of referring to DCC and its services.

52.     In addition, DCC has expanded into Virginia using "Dewberry" in complete disregard of the Settlement Agreement. DCC's new website, www.dewberrygroup.com, contains a link to "OUR PORTFOLIO" which includes "Dewberry Hospitality," "Dewberry Office," and "Dewberry Living." Dewberry hospitality lists one property in South Carolina. Dewberry Office lists two in Georgia. Lastly, Dewberry Living lists three properties, one of which is located in Virginia.

53.     In describing its Virginia property, DCC states that the property will "receive the full Studio Dewberry treatment in terms of modernization and first-class amenities, its architectural provenance and integrity will be preserved and celebrated." A copy of the relevant page from DCC's website is attached as Exhibit F.

54.     In describing "Our Team," DCC lists the following references and information regarding Studio Dewberry:

a.   Under John K. Dewberry, DCC states "[b]eginning with collaborations with architects, preservationists and design firms on his homes… Studio Dewberry has expanded organically to include additional larger partnerships on design, furnishing, lighting and art commissions, for prominent developments within the Dewberry Group's portfolio… It represents yet another way to exceed corporate, residential and hospitality industry expectations."

b.   DCC lists Lockie Brown as the Executive Vice President, Design, who "has designed key properties for major luxury hotel brands through the United States

and the Caribbean." DCC goes on to say that "Today, Mr. Brown's focus has expanded to include Studio Dewberry, where he and a team of designers, architects and brand experts work closely with Mr. and Mrs. Dewberry collaborate [*sic*] on the design of all major development projects, as well on the Dewberry Hospitality Group's expanding luxury hotel division."

c.  DCC lists Jamie Brown Dewberry as a director of the Dewberry Foundation, and a Principal with Studio Dewberry.

d.  DCC lists Elizabeth Armstrong as the Director of Brand Development for Studio Dewberry, where she is "responsible not only for creating and refining The Dewberry Hotel's communications and branding, but also for maximizing The Dewberry brand's long-term potential, growth and profitability through strategic partnerships and experiential programming."

e.  DCC lists Trey Howard as an associate designer with Studio Dewberry who "has been a key contributor to the advancement of Studio Dewberry."

**(DCC's Infringing Trademark Applications)**

55.     After the parties entered into the Settlement Agreement and prior to December 27, 2017, DCC caused federal applications to register U.S. Application Serial No. 87,601,685 for the word mark "DEWBERRY GROUP" to be filed with the USPTO, for "[c]ommercial real estate development services; commercial real estate services including property management services, leasing services, and brokerage services; and equity capital management services" based on an intent to use that mark in commerce at some point in the future. That is, the application was supported by a declaration that the "applicant has a bona

fide intention to use the mark in commerce on or in connection with the goods/services in the application," but did not assert that the mark had yet been used. This application infringed on the DEWBERRY® Marks, and violated the Settlement Agreement.

56.     On December 27, 2017, upon learning of this application, Dewberry sent a letter to DCC regarding U.S. Application Serial No. 87,601,685, describing how that application evidenced DCC's intent to infringe Dewberry's prior rights in its DEWBERRY® Marks.  Dewberry further described how DCC's application also evidenced DCC's intent to breach the Settlement Agreement entered on February 26, 2007. The letter concluded by proposing that: DCC abandon any plans to use "DEWBERRY GROUP" in connection with real estate development services, real estate services, or related services of any kind; DCC cease and desist from any use of "DEWBERRY GROUP" in connection with real estate development services or real estate services of any kind, if any such use has begun; DCC expressly abandon Application Serial No. 87,601,685; and DCC refrain from any use of or attempt to register the "DEWBERRY GROUP" or any other "DEWBERRY" mark for real estate development or real estate-related services in the future. A copy of this letter is attached as Exhibit G.

57.     On January 11, 2018, DCC responded via its general counsel, David B. Groce. In its response, DCC stated "I'd like to assure you again that we had and have no intent to infringe your client's valid trademark rights or to breach the terms of the settlement agreement. In order to resolve the concerns expressed in your letter, we are willing to abandon our application serial number 87,601,685. We are also willing to confirm, acknowledge and ratify the ongoing applicability of the obligations set forth in the 2007

settlement agreement. We therefore agree not to attempt to register the term DEWBERRY

GROUP for real estate development services and further agree not use [sic] the term in

connection with any present or future real estate development or related services in Virginia,

Maryland, or the District of Columbia. If we perform such services in those areas, we will

use DCC or something else that is not confusingly similar to any of your client's marks. We

regret any concern that may have been created by the filing of the above-referenced

application and we trust that this resolves the matter." A copy of this letter is attached as

Exhibit H.

58. On April 3, 2018, DCC caused federal applications to register four marks

which infringe on the DEWBERRY® Marks to be filed with the USPTO. The applications

are for the Group Mark (U.S. Application Serial No. 87860522), the Office Mark (U.S.

Application Serial No. 87860526), the Living Mark (U.S. Application Serial No. 87860533),

and the Studio Mark (U.S. Application Serial No. 87860530). All four applications recite

real estate-related services. Copies of the USPTO online records for these four DCC

applications are attached as Exhibits I, J, K, and L.

59. The applications for the Group Mark, Office Mark, and Living Mark were

filed in the name of DCC as the applicant. The application for the Studio Mark was filed in

the name of StudioDew, LLC as the applicant. The address of StudioDew, LLC was listed as

the same address listed for DCC in the other three applications, namely, Suite 250, One

Peachtree Pointe, 1545 Peachtree Street, Atlanta, Georgia 30309.

60. All four of these DCC applications were filed on the basis of intent to use (vs.

actual use). That is, none of the applications stated a date of first use, either use in commerce

which the U.S. Congress has the power to regulate or use anywhere. Instead, the applications were supported by a declaration that the "applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application."

61.     On June 1, 2018, upon learning of Applications Serial Nos. 87-860,522, 87-860,533, 87-860,526, and 87-860,530, Dewberry was forced to again send a letter to DCC regarding its intent to infringe on Dewberry's trademarks, and DCC's intent to violate the Settlement Agreement. Dewberry included a chart containing the Application Data, along with the "Infringing Services" that included, *inter alia*, "Apartment and multi family living communities, real estate services, and consulting services in the field of interior and exterior design for real estate." A copy of this letter is attached as Exhibit M.

62.     On June 14, 2018, DCC responded via Stephen Dorvee of Arnall Golden Gregory, LLP. In its response, DCC asserted that "so long as it does not use DEWBERRY in the name of, or as a mark for, any architectural and/or engineering company or in connection with architectural engineering services, it is otherwise free to use DEWBERRY." Despite the infringing services, including "real estate services," DCC maintained that "none of the pending DCC applications that you reference relate to real estate development services, architectural services or any other services listed in Dewberry's trademarks." DCC concluded by asserting that "to the extent that it performs real estate development, architecture or related services in Virginia, DCC will only use the term DCC. To the extent it DCC [sic] performs rental brokerage, leasing and management of commercial property, real estate services concerning leasing and management of commercial property, office and office space, and consulting services in the field of interior and exterior design for real estate, it

may do so under the DEWBERRY name in those states and district. Please be advised, however, that my client does not have any intention to do so at this point." A copy of this letter is attached as Exhibit N.

63.     On July 13, 2018, Dewberry responded to DCC's letter, reiterating that Dewberry did not and would not waive its otherwise valid trademark rights by permitting DCC's use of only "DEWBERRY CAPITAL" in Virginia, Maryland, and Washington DC for real estate development or related services. Dewberry explained that DEWBERRY CAPITAL was acceptable to Dewberry because "CAPITAL" connoted financial-related services, but that DEWBERRY GROUP, DEWBERRY OFFICE, DEWBERRY LIVING, and STUDIO DEWBERRY do not sufficiently differentiate between the companies and their services well enough to avoid a likelihood of confusion. Dewberry also pointed out that DCC's services listed in its offending trademark applications are broad enough to encompass the services included in the Settlement Agreement. Lastly, Dewberry referenced various infringing references contained on DCC's website and reminded DCC of Mr. Groce's assurances to the effect that DCC would honor the Settlement Agreement and refrain from certain actions that would violate it.  A copy of this letter is attached as Exhibit O.

64.     As of the date of this filing, DCC has not responded to any of the issues and arguments raised in Dewberry's letter of July 13, 2018.

65.     DCC is violating the Settlement Agreement by attempting to register the Group Mark, the Office Mark, and the Living Mark, as described above.

**(Processing of DCC's Infringing Studio Mark Application)**

66.     By office action dated July 25, 2018, the USPTO refused DCC's U.S. Application Serial No. 87860530 for the Studio Mark for "consulting services in the field of interior and exterior design for real estate" on the basis of likelihood of confusion with both the DEWBERRY® word mark and the DEWBERRY & Berry Design® Marks.

67.     With respect to the first element of likelihood of confusion, the similarity of the marks at issue, the trademark examiner stated:

> The marks of the parties are similar in sound, appearance and commercial impression as a result of the term "DEWBERRY." This term is the dominant literal element of the registered mark. It is also significant to the commercial impression of the proposed mark.

Office Action dated July 25, 2018, with respect to U.S. Application Serial No. 87860530, page 2.

68.     Turning to the second element of likelihood of confusion, the similarity or relatedness of the services at issue, the trademark examiner stated:

> the services of the parties are similar and related because they relate to interior design. Registrant [Dewberry] provides interior design services and applicant [StudioDew, LLC] provides consulting services concerning interior and exterior design for real estate.
>
> In addition, applicant's services are related to the engineering and architecture design services also identified by registrant. The attached Internet evidence, consisting of third party advertising, establishes that the same entity commonly provides services in the nature of engineering, architectural design, interior and exterior design and markets the services under the same mark.

*Id.* at 2.

69.     No response to the refusal was filed, and as a result the application for the Studio Mark was deemed abandoned as of January 28, 2019.

70.     Notwithstanding the refusal and abandonment, DCC is currently using the term "Studio Dewberry" on the DCC website and has used the Studio Mark in printed material promoting DCC's real estate development services.

**(Processing of DCC's Other Three Infringing Applications)**

71.     In accordance with the required procedure, Dewberry submitted letters of protest to the U.S. Deputy Commissioner for Trademark Examination Policy against the other three relevant DCC applications, *i.e.*, those for the Group Mark, the Office Mark, and the Living Mark, accompanied by evidence of the similarity of the marks in question and the similarity and relatedness of many of the services in question. Some or all of the evidence submitted by Dewberry was forwarded to the examiners assigned to the Group Mark, the Office Mark, and the Living Mark for consideration.

72.     Thereafter, the assigned trademark examiners issued final refusals to approve DCC's applications for the Group Mark, the Office Mark, and the Living Mark.

73.     In issuing a final refusal to register the Group Mark, which is attached as Exhibit P, the trademark examiner stated:

**THIS IS A FINAL ACTION.**

…

SECTION 2(d) REFUSAL – LIKELIHOOD OF CONFUSION

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 2991043 and 2991044, both owned by Dewberry Engineers Inc. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* Registrations were sent previously.

…

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services.

…

*Similarity of the Marks*

…

The common term DEWBERRY is the dominant feature of the applicant's and registrant's marks because it is the distinctive term and because the design and descriptive wording are less important. When evaluating a composite mark consisting of words and a design, the word portion is normally accorded greater weight because it is likely to make a greater impression upon purchasers, be remembered by them, and be used by them to refer to or request the goods and/or services.

…

In further support of a likelihood of confusion, it is apparent that the applicant merely adds the descriptive term "group" and the design featuring the letter "D" to the registered marks. Adding a term to a registered mark generally does not obviate the similarity between the compared marks, as in the present case, nor does it overcome a likelihood of confusion under Section 2(d).

…

Accordingly, giving each feature of the marks appropriate weight, the marks when compared in their entireties are sufficiently similar to create consumer confusion or mistake as to the source of the goods and/or services despite some differences.

*Similarity of the Goods and/or Services*

…

The compared goods and/or services need not be identical or even competitive to find a likelihood of confusion. [Citations omitted.] They need only be "related in some manner and/or if the circumstances surrounding their

marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source."

…

Accordingly, the business and real estate services identified in the application and the registered cost assessment and real estate development services are considered related for purposes of the likelihood of confusion analysis.

Accordingly, with the contemporaneous use of highly similar marks that share the wording DEWBERRY, consumers are likely to conclude that the services originate from a single source. As such, registration is refused under Section 2(d).

74.     Similar reasoning was used in the final refusals of the Office Mark and the Living Mark.

75.     DCC has appealed all three refusals, but the appeals have not been ruled upon as of the date of this Complaint.

### (The Confusing Similarity of the DEWBERRY® Marks, DCC, and the Infringing Marks)

76.     Starting decades before DCC even claims to have come into existence, Dewberry has been using and doing business under its DEWBERRY® names and marks.

77.     Dewberry's DEWBERRY® names and marks have longstanding priority over the Infringing Marks.

78.     The Infringing Marks are closely similar to Dewberry's DEWBERRY® Marks in sight, sound, and meaning by virtue of the identical dominant component, DEWBERRY. As shown in DCC's March 8, 2006 demand letter to Dewberry, which is attached as Exhibit Q, DCC has admitted this in connection with its earlier Dewberry Capital marks, and DCC has admitted that some of the services provided under the Group Mark,

Office Mark, and Living Mark are related to services provided under the DEWBERRY® Marks and travel in the same trade channels.

79.     Dewberry has not licensed or authorized DCC to use its DEWBERRY® Marks or to use close variations of those marks.

80.     The Infringing Marks create a likelihood of confusion with Dewberry's prior DEWBERRY® Marks, leading the relevant consuming groups, the relevant trades, and others to believe mistakenly that DCC is affiliated with, connected with, sponsored by, approved by, or otherwise associated with Dewberry, and/or that DCC's services are supplied by, licensed by, or associated with Dewberry.

(Actual Confusion Between the Parties' Names and Marks)

81.     DCC's use of the component DEWBERRY also has caused and is causing actual confusion among consumers and the public.

82.     On or about August 31, 2006, a businessperson from Roswell, Georgia tripped and fell in a parking garage at the Peachtree Pointe complex in Atlanta, Georgia. That complex is a DCC development, which was developed under the Dewberry Capital mark. This businessperson mistakenly believed that DCC's parking garage was connected with Dewberry. Thus, on September 1, 2006, she sent an email to Dewberry describing the accident in the DCC parking garage. A copy of the email correspondence between the businessperson and Dewberry is attached as Exhibit R. Since receiving these emails, Dewberry has worked with this businessperson in an effort to dispel her confusion between DCC and Dewberry.

83.     In August 2009, a tenant of DCC, Eduardo Guevara of Planet Smoothie,
mistakenly sent a letter to Dewberry's Fairfax, Virginia office about an issue relating to his tenancy
with DCC.  Dewberry directed Mr. Guevara to DCC's Atlanta office and forwarded the letter to
DCC.

84.     On or around March 2016, Dewberry received a "Warrant in Debt" at its Fairfax
office, directed at "Dewberry Capital, LLC," connected to a breach of contract action in Richmond
City General District Court. Dewberry was again forced to clarify that the intended defendant,
DCC, was not connected to any Dewberry company, whether headquartered in Fairfax, Virginia,
or otherwise.

## (Consequences of DCC's Willful Conduct)

85.     As evidenced by DCC's repeated attempts to infringe the DEWBERRY® Marks and
breach the Settlement Agreement, DCC's conduct has been willful and intentional. As a result,
Dewberry is entitled to presumptions that its DEWBERRY® Marks are protectable, and that DCC's
imitation is causing a likelihood of consumer confusion.

86.     DCC's trademark infringement and unfair competition are causing irreparable injury
to Dewberry by threatening to confuse and deceive actual and potential consumers, by threatening to
disrupt customer relationships, and by threatening and damaging Dewberry's reputation, goodwill, and
position in the marketplace.

87.     In order to avoid such confusion and deception, Dewberry requests that the
Court enjoin DCC from using or registering the Infringing Marks, and compensate Dewberry
for its damages.

## COUNT I
## (Federal Trademark Infringement)

88.     Dewberry repeats the allegations made in paragraphs 1 through 87, and incorporates them into this Count.

89.     By making unauthorized use of Dewberry's registered DEWBERRY® Marks, DCC is committing infringement of Dewberry's federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

90.     DCC's unauthorized use of the registered DEWBERRY® Marks is knowing, intentional, and willful in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

91.     As a result of DCC's trademark infringement, Dewberry is suffering irreparable harm for which there is no adequate remedy at law.

92.     Unless DCC is enjoined by this Court, DCC will continue to commit trademark infringement; it will continue to cause confusion; and it will continue to inflict irreparable harm upon Dewberry.

93.     Dewberry is entitled to recover from DCC its profits, any damages that Dewberry has sustained from DCC's trademark infringement, and the costs of this action pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

94.     Because DCC's activities are willful, Dewberry is also entitled to recover from DCC treble damages and reasonable attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT II
## (Federal Unfair Competition)

95.     Dewberry repeats the allegations made in paragraphs 1 through 94, and incorporates those allegations into this Count.

96.     By making unauthorized use of the DEWBERRY® Marks, and by committing other acts of trade dress infringement and unfair competition, DCC is engaging in false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

97.     DCC's unauthorized use of the DEWBERRY® Marks is knowing, intentional, and willful in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

98.     As a result of DCC's unfair competition, Dewberry is suffering irreparable harm for which there is no adequate remedy at law.

99.     Unless DCC is enjoined by this Court, DCC will continue to commit unfair competition; it will continue to cause confusion; and it will continue to inflict irreparable harm upon Dewberry.

100.    Dewberry is entitled to recover from DCC its profits, any damages that Dewberry has sustained from DCC's unfair competition, and the costs of this action pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

101.    Because DCC's activities are willful, Dewberry is also entitled to recover from DCC treble damages and reasonable attorney's fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT III
### (Common Law Trademark Infringement)

102.    Dewberry repeats the allegations in paragraphs 1 through 101, and incorporates those allegations into this Count.

103.    By making unauthorized use of the DEWBERRY® Marks, DCC is engaging in common law trademark infringement in violation of Virginia law.

104.     DCC's unauthorized use of Dewberry's DEWBERRY® Marks is knowing, intentional, and willful.

105.     As a result of DCC's acts of trademark infringement, Dewberry is suffering irreparable harm for which there is no adequate remedy at law.

106.     Unless DCC is enjoined by this Court, DCC will continue to commit acts of trademark infringement, and it will continue to confuse the public and cause irreparable harm to Dewberry.

107.     Dewberry is entitled to recover from DCC its profits, any damages that Dewberry has sustained from DCC's infringement, and the costs of this action.

## COUNT IV
### (Common Law Unfair Competition)

108.     Dewberry repeats the allegations in paragraphs 1 through 107, and incorporates those allegations into this Count.

109.     By making unauthorized use of the DEWBERRY® Marks, DCC is engaging in common law unfair competition in violation of Virginia law.

110.     DCC's unauthorized use of Dewberry's DEWBERRY® Marks is knowing, intentional, and willful.

111.     As a result of DCC's unfair competition, Dewberry is suffering irreparable harm for which there is no adequate remedy at law.

112.     Unless DCC is enjoined by this Court, DCC will continue to engage in unfair competition, and it will continue to confuse the public and cause irreparable harm to Dewberry.

113.     Dewberry is entitled to recover from DCC its profits, any damages that Dewberry has sustained from DCC's unfair competition, and the costs of this action.

## COUNT V
## (Breach of Contract)

114.     Dewberry repeats the allegations in paragraphs 1 through 113, and incorporates those allegations into this Count.

115.     On February 26, 2007, the parties entered into the Settlement Agreement (Exhibit D).

116.     Pursuant to paragraph B.2 of the Settlement Agreement, DCC agreed that subject to paragraph B.3, it would use only the "DEWBERRY CAPITAL name and mark in connection with its promotions, offering and performance of real estate development services as a real estate developer, including purchasing real property, arranging for the construction of commercial and residential buildings and mixed use properties, and leasing and managing properties."

117.     Pursuant to paragraph B.3 of the Settlement Agreement, DCC agreed that "[to] the extent that DCC performs any present or future real estate development or related services in the Commonwealth of Virginia, the State of Maryland, or the District of Columbia, it shall do so only under the name and mark DCC and not under the name or mark DEWBERRY CAPITAL."

118.     Pursuant to paragraph B.6 of the Settlement Agreement, DCC agreed that it "will not use the word DEWBERRY in the name of, or as a mark for, any architectural and/or engineering company, or in connection with any architectural or engineering services."

31

119.     Despite their material obligations contained in paragraphs B.2, B.3, and B.6 of the Settlement Agreement, DCC has: (1) used names other than "DEWBERRY CAPITAL" when promoting, offering, and performing real estate development services as a real estate developer; (2) performed real estate development or related services in the Commonwealth of Virginia, under a name other than DCC; and (3) used the word DEWBERRY in the name of, or as a mark for, architectural services.

120.     Specifically, DCC has refused to abandon its plans to use DEWBERRY GROUP, DEWBERRY LIVING, DEWBERRY OFFICE, and STUDIO DEWBERRY. Further, DCC's new website, www.dewberrygroup.com, contains numerous instances of using DEWBERRY in connection with marketing or other materials in the field of interior and exterior design for real estate, architectural design services, interior design services. This includes, but is not limited to, DCC's project in Charlottesville, Virginia, advertised on www.dewberrygroup.com.

121.     DCC assured Dewberry on both January 11, 2018 and June 14, 2018 that DCC would honor the Settlement Agreement, yet DCC maintains that it may perform "rental brokerage, leasing and management of commercial property, real estate services concerning leasing and management of commercial property, office and office space, and consulting services in the field of interior and exterior design for real estate," under the DEWBERRY name in Virginia, Maryland, and Washington, DC.

122.     These actions constitute DCC's material breach of the Settlement Agreement. As a result of DCC's breaches of the Settlement Agreement, DCC has caused Dewberry to

incur significant damages in challenging DCC's U.S. Trademark Applications for all four of the Infringing Marks, and the costs and fees of this action.

## <u>REQUEST FOR RELIEF</u>

Dewberry requests the Court to enter an Order granting it the following legal and equitable relief:

1.      Adjudging that DCC has engaged in, and is engaging in, acts of federal trademark infringement and unfair competition; and common law trademark infringement, trade dress infringement, and unfair competition, pursuant to Counts I, II, III, and IV of this Complaint;

2.      Preliminarily and permanently enjoining DCC and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from engaging in the following acts, pursuant to Counts I, II, III, IV, and V of this Complaint:

    (a)      using the name or mark DEWBERRY, or any other name or mark that incorporates the name or mark DEWBERRY, or is otherwise confusingly similar to the DEWBERRY® Marks on or in connection with any real estate-related products or services, including but not limited to leasing of real estate, real estate investment, real estate management, real estate development, real estate site selection, architectural services, and engineering services;

    (b)      otherwise competing unfairly with Dewberry by trading off of Dewberry's goodwill and business reputation;

(c)     conducting real estate development or related services in the Commonwealth
of Virginia, the State of Maryland, or the District of Columbia under any name
or mark that includes the word DEWBERRY;

(d)     using the word DEWBERRY in the name of, or as a mark for, any
architectural and/or engineering company, or in connection with any
architecture or engineering services, anywhere in the United States;

3.      Requiring DCC to file with this Court, and to serve on Dewberry within thirty
(30) days after service of such an injunction, a report in writing and under oath setting forth
in detail the manner and form in which DCC has complied with the injunction, pursuant to
Counts I, II, III, IV, and V of this Complaint;

4.      Awarding Dewberry its actual compensatory damages as a judgment against
DCC, in an amount to be determined at trial, for DCC's violations of 15 U.S.C. § 1125(a) and
15 U.S.C. § 1114(1), and for DCC's common law trademark infringement and unfair
competition, pursuant to Counts I, II, III, and IV of this Complaint;

5.      Awarding Dewberry treble damages and/or other enhanced damages as a
judgment against DCC for its knowing, intentional, and willful violations of the Lanham Act
as alleged in Counts I and II of this Complaint;

6.      Awarding Dewberry its costs and reasonable attorneys' fees pursuant to the
Lanham Act and other legal principles alleged in Counts I, II, III, and IV of this Complaint;

7.      Awarding Dewberry its costs and reasonable attorneys' fees associated with
challenging DCC's trademark applications that infringe on Dewberry's pre-existing
trademarks, in violation of the Settlement Agreement pursuant to Count V of this Complaint;
and

8.      Awarding Dewberry its costs any other relief that the Court may deem to be appropriate.

Dated: May 29, 2020.

**DEWBERRY ENGINEERS INC.**
**By Counsel**


_____/s/_____

Alan B. Croft (VSB # 9209)
Ralph M. Tener (VSB # 25430)
Mark Emilio S. Abrajano (VSB # 91682)
McCandlish Lillard, P.C.
11350 Random Hills Road, Suite 500
Fairfax, Virginia, 22030
PH: (703) 273-2288
FX: (703) 273-4592
acroft@mccandlaw.com
rtener@mccandlaw.com
mabrajano@mccandlaw.com
*Counsel for the Plaintiff*