## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| DEWBERRY ENGINEERS INC., )<br><br>     Plaintiff, )<br><br>v. )<br>          )<br>DEWBERRY GROUP, INC. F/K/A )<br>DEWBERRY CAPITAL CORPORATION. )<br>          )<br>     Defendant. )<br>          )<br>_____ ) | Civil Action No. 1:20-cv-610-LO-IDD |

### PLAINTIFF DEWBERRY ENGINEERS INC.'S OPPOSITION
### TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Plaintiff Dewberry Engineers Inc. ("Dewberry") opposes the Motion for Protective Order

[ECF# 34] filed by Defendant Dewberry Group, Inc. f/k/a Dewberry Capital Corporation

("Dewberry Group") for the following reasons.

### INTRODUCTION AND SUMMARY OF ARGUMENT

The third-party subpoena recipients—not Dewberry Group—have standing to challenge

the non-party subpoenas.  A party only has standing to do so in the narrow circumstance where it

can prove that the subpoenas seek the party's privileged documents or confidential/trade secret

materials.  Dewberry Group did not make this argument, let alone provide any evidence

necessary to support it.  Dewberry Group also failed to carry its burden of proof for good cause

because it did not argue or prove that it will suffer any specific annoyance, embarrassment,

oppression, undue burden, expense, prejudice, or harm from the subpoenas without a protective

order in place.  Finally, Dewberry Group has filed its motion for four of the five subpoenas in the

wrong venue because their places of compliance are located outside of the Eastern District of

Virginia.

Dewberry Group's motion fares no better on the merits, given the clear relevance and materiality of the subpoenaed documents.  By way of background, Dewberry has sued Dewberry Group for trademark infringement and breach of a 2007 Confidential Settlement Agreement that resolved a prior trademark dispute between the parties.  Under the settlement agreement, Dewberry Group (then operating as "Dewberry Capital Corp.") was allowed to use "Dewberry" (a registered trademark of Plaintiff Dewberry) only under very strict limitations to avoid confusion with Dewberry and its trademarks—confusion that Dewberry Group and its attorney had conceded because "Dewberry Capital" was "extremely similar to" Dewberry's trademarks. *See* Dewberry Group's Mar. 2006 Letter [ECF# 1-18] at 3.  Specifically, Dewberry Group was permitted to use "Dewberry" for certain real estate-related services in a number of geographical markets without being sued for trademark infringement or breach of the agreement only if it continued to use its "Dewberry Capital" name.  Further, Dewberry Group was prohibited from using any name other than "DCC" to conduct "any present or future real estate development or related services" in Virginia, Maryland or the District of Columbia, and could not use "Dewberry" at all in connection with architectural or engineering services.  *See* Settlement Agreement [ECF# 1-5] § B.2–6.  Dewberry Group followed these clear limitations and restrictions for years.

Recently, however, Dewberry Group flagrantly disregarded those limitations and restrictions by adopting its "Dewberry Group" and related proposed trademarks (Dewberry Office, Dewberry Living, and Studio Dewberry).  The United States Patent and Trademark Office rejected these marks because they were confusingly similar to Dewberry's registered marks.  *See* Compl. [ECF# 1] ¶¶ 66–74.  Among other things, Dewberry Group violated the settlement agreement by conducting real estate development and related services in Virginia

using its various "Dewberry" names (and not "DCC") and conducting architectural services under one or more "Dewberry" names.

For its trademark infringement and breach-of-contract claims, Dewberry is entitled to explore in discovery Dewberry Group's various real estate-related activities and services provided in connection with more than twenty properties it claims to manage and/or own. Dewberry's subpoenas cover only three of those properties, and Dewberry limited its requests by time and specific topics to seek only documents relevant and material to its claims.  Dewberry Group's accusations that the subpoenas are overbroad and seek irrelevant documents are therefore unfounded.  Moreover, because many of Dewberry Group's explanations and representations about the nature and extent of its real estate-related services and activities have been shown to be incorrect, incomplete, or misleading, it has made discovery through third-party subpoenas not only justified, but absolutely necessary.

Lastly, Dewberry informed Dewberry Group's counsel in writing that its threatened motion was defective and without legal or factual support, supplying case law citations and relevance justifications.  Dewberry Group ignored that information and filed its unnecessary and unfounded motion anyway.  Dewberry therefore requests an award of its reasonable expenses for having to spend time and resources opposing it.

## ARGUMENT

### I.  Dewberry Group Lacks Standing To Quash The Subpoenas.

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought."  *In re Grand Jury Subpoena John Doe*, 584 F.3d 175, 184 n.14 (4th Cir. 2009) (quoting 9A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 2459 (3d ed. 1998)); *United States v. Idema*, 118 F. App'x 740, 744

(4th Cir. 2005) (same).  "A motion to quash should be made by the person or entity from whom or from which the documents or things are requested . . . . Plaintiff is not the party to whom the subpoena was issued.  Consequently, absent a showing of privilege or private right, he has no standing upon which to quash it."  *Green v. Sauder Mouldings, Inc.*, 223 F.R.D. 304, 306 (E.D. Va. 2004).

As a practical matter, this "personal right or privilege" exception confers standing where the subpoena seeks the party's confidential or privileged documents from the third party.  *See, e.g., Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 440 (E.D. Va. 2018) (conferring standing where the party "has credibly asserted that some documents requested in the Subpoena are protected by the attorney-client privilege and the work-product doctrine"); *Richardson v. Sexual Assault/Spouse Abuse Research Ctr., Inc.*, 270 F.R.D. 223, 226 n.2 (D. Md. 2010) (conferring standing where the party made a sufficient showing of its own potentially privileged and confidential materials in possession of the third party); *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, No. CV 3:16-MC-1, 2016 WL 1071016, at *4 (E.D. Va. Mar. 17, 2016) (explaining that the party "has standing to challenge any confidential or privileged material covered by" the third-party subpoena).

Dewberry Group does not assert (or prove) that any of the documents sought from the third parties are privileged or confidential.  Nor could it.  The documents sought are in the possession of non-lawyer third parties so they are not privileged.  Further, any possible confidentiality concerns are covered by the Stipulated Protective Order and Consent Discovery Order.  Dewberry must treat any documents produced by the subpoenaed parties as confidential for 10 business days and re-produce them to Dewberry Group, who then has 10 business days to designate them as confidential.  *See* Stipulated Protective Order [ECF# 31] ¶ 13; Consent

Discovery Order [ECF# 23] § VI.B.  Without any claims of confidentiality or privilege, Dewberry Group has not articulated "some personal right or privilege with regard to the documents sought" sufficient to confer standing.  *In re Grand Jury Subpoena John Doe*, 584 F.3d 175, 184 n.14 (4th Cir. 2009) (citations omitted).  Dewberry Group's claims that the subpoenas are overbroad and seek irrelevant documents are not sufficient to confer standing.  *See Watty v. Sheriff of Clarendon Cty.*, No. 4:10-CV-2056, 2012 WL 269363, at *3–4 (D.S.C. Jan. 30, 2012) (rejecting a party's standing to challenge third-party subpoenas as overbroad and seeking irrelevant documents).

Dewberry Group knows it lacks standing because Dewberry pointed it out the day before Dewberry Group filed its motion.  *See* Jan. 28, 2021 Dewberry Counsel's Email [attached hereto as ***Exhibit A***].[1]  Dewberry Group tried to circumvent its standing problem by styling its motion as seeking a protective order under Rule 26, although it is nothing more than a veiled motion to quash the subpoenas under Rule 45.  *See, e.g.*, Dewberry Group's Mem. in Supp. [ECF# 35] at 12 (Dewberry Group "requests that the Court grant its motion for protective order on the basis that [Dewberry's] five subpoenas duces tecum are overbroad and seek irrelevant information. ***They should therefore be quashed.***" (emphasis added)).  Dewberry Group cites no Fourth Circuit precedent to support its theory that its Rule 26 motion for a protective order is appropriate for quashing subpoenas issued under Rule 45.  Rather, Dewberry Group relies on three unpersuasive district court cases.  *See id.* at 6 (citing *Singletary, Pena,* and *ThompsonMcMullan*).

---

[1]  For all ***Exhibits*** referenced in this brief, see Declaration of Jonathan L. Caulder, Esq. [attached hereto as Exhibit 1].

In *Singletary*, the court conferred standing on an employee to challenge a subpoena to its former employer for employment records. The employee argued that he held "a 'personal right' with respect to the information contained in his employment records." *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 239 (E.D. Va. 2012). The court agreed, citing cases that confer standing to challenge subpoenas seeking employment records and observing that "employment records contain 'highly personal and confidential information.'" *Id.* at 240–41 (citations omitted). Thus, *Singletary* applied the "personal right or privilege" exception to standing adopted by the Fourth Circuit.

The remaining two cases cited by Dewberry Group are unpublished. *See ThompsonMcMullan*, 2016 WL 1071016; *Pena v. Burger King Corp.*, No. 2:12-CV-248, 2012 WL 12547064 (E.D. Va. Sept. 21, 2012). Moreover, *Pena* conferred standing on a party to challenge a subpoena seeking "confidential information, including medical information, income tax information, and information about family members." *Pena*, 2012 WL 12547064, at *2. Thus, *Pena* also applied the "personal right or privilege" exception to standing adopted by the Fourth Circuit. Dewberry's subpoenas do not seek employment records, medical information, income tax information, or information about family members.

## II.   Dewberry Group Has Not Argued Or Proven Good Cause Under Rule 26(c).

Dewberry Group has tried to skirt the well-established standing limitations through semantics by labeling its motion as one for a protective order instead of one to quash, even though it is plainly the latter. The Court should reject this transparent tactic because otherwise it would render the strict limitations on a party's standing to challenge third-party subpoenas a dead letter.

Even if the standing problem were overlooked, Dewberry Group has not established good cause for another protective order. "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "The party seeking a protective order has the burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result if no protective order is granted.'" *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (citations omitted). "Simply providing conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one is insufficient." *Jarrell v. Kroger Ltd. P'ship I*, No. 2:14-CV-57, 2014 WL 12770216, at *3 (E.D. Va. July 17, 2014) (citations, quotation marks, and emphasis omitted); *McAfee v. Boczar*, No. 3:11-CV-646, 2012 WL 2374173, at *3 (E.D. Va. June 22, 2012) ("Good cause cannot be shown merely through 'stereotyped and conclusory statements' of harm." (internal citations and quotation marks omitted)).

Dewberry Group says the subpoenas "are overbroad and seek irrelevant information." *See* Dewberry Group's Mem. in Supp. [ECF# 35] at 8. But Dewberry Group has not argued— much less proven—that it will suffer any specific annoyance, embarrassment, oppression, undue burden, expense, prejudice, or harm from the subpoenas without a protective order in place. *See Palmer v. Big Lots Stores, Inc.*, No. 3:14-CV-276, 2014 WL 3895698, at *3 (E.D. Va. Aug. 8, 2014) (denying a motion for a protective order because the movant "has not met its burden to show annoyance, embarrassment, oppression, or undue burden or expense, Fed. R. Civ. P. 26(c), nor has it demonstrated that specific prejudice or harm will result if no protective order is granted."). This failure is further proof that Dewberry Group's motion is nothing more than a veiled and improper Rule 45 motion to quash.

### III.     Dewberry Group Filed Its Motion In The Wrong Venue For Four Subpoenas.

Subpoena-related motions are proper in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d). That district court may later transfer such motions to the district court where the action is pending "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The 2013 Amendment to Rule 45 clarified where subpoena-related motions are proper. *See* Fed. R. Civ. P. 45 advisory committee's note ("Under Rule 45(d)(2)(B), 45(d)(3), and 45(e)(2)(B), subpoena-related motions and applications are to be made to the court where compliance is required under Rule 45(c). Rule 45(f) provides authority for that court to transfer the motion to the court where the action is pending."); *Ellis v. Arrowood Indem. Co.*, No. 2:14-MC-00146, 2014 WL 4365273, at *3 (S.D.W. Va. Sept. 2, 2014) ("Under post–2013 Rule 45, the proper court to resolve a motion to quash is the court in the district where compliance is required.").

Dewberry's subpoenas require compliance at the following places:

| Third Party | Place of Compliance | Citation |
|---|---|---|
| Marietta Sand Corporation | Jacksonville, Florida | ECF# 35-1 at 87 |
| RLH Construction, LLC | Orlando, Florida | ECF# 35-1 at 105 |
| Atlantic Capital Properties II, LLC | Atlanta, Georgia | ECF# 35-1 at 133 |
| Square Mile Capital Management LLC | New York, New York | ECF# 35-1 at 149 |
| Bowman Consulting Group, Ltd. | Richmond, Virginia | ECF# 35-1 at 165 |

All but the last subpoena require compliance in places outside of the Eastern District of Virginia. Accordingly, Dewberry Group's motion is improperly before the Court for these four subpoenas and it should be denied as such. *See, e.g.*, *Poe v. Am.'s Pizza Co., LLC*, No. 3:14-CV-119, 2015 WL 6504796, at *3 (W.D.N.C. Oct. 27, 2015) ("Despite what appear to be serious defects in Plaintiff's attempt to subpoena certain information from non-parties, however, it does not appear

that the instant motions are properly before this Court" because "Plaintiff's subpoenas command compliance in Mt. Pleasant, South Carolina, not the Western District of North Carolina.").

## IV.      Dewberry Group's Motion Fails On The Merits.

### A.      Dewberry's Subpoenas Seek Relevant And Material Documents.

Dewberry and Dewberry Group "have been engaged in a battle for the use of the trademarked Dewberry name for several years."  *See* Dismissal Op. [ECF#19] at 1.  In dismissing Dewberry Group's counterclaims as prohibited by the settlement agreement, Judge O'Grady explained that Dewberry "retain[ed] the registered trademarks for the Dewberry name and marks 'at any time for any services or products it chooses throughout the United States and elsewhere.'"  *Id.* (citation omitted).

Contrasting Dewberry's unfettered rights to use its "Dewberry" name and marks, the settlement agreement restricted Dewberry Group's use of any "Dewberry" name in at least three ways.  First, to the extent Dewberry Group (then operating as "Dewberry Capital Corp.") "performs any present or future real estate development or related services in" Virginia, Maryland, or the District of Columbia, "it shall do so only under the name and mark DCC."  *See* Settlement Agreement [ECF# 1-5] § B.3.  Second, Dewberry Group shall not "use the word DEWBERRY" in "connection with any architectural or engineering services" in any jurisdiction.  *Id.* § B.6.  Third, to further differentiate Dewberry Group from Dewberry, Dewberry Group was required where feasible "to continue to use its [Roman-style] column logo in its current format."  *Id.* § B.10.

Years later, Dewberry Group changed its name from Dewberry Capital "to Dewberry Group and established the sub-brands Dewberry Office, Dewberry Living, and Studio Dewberry" all without requesting or obtaining permission from Dewberry.  *See* Dewberry

Group's Interrog. #4 Resp. [*Exhibit B*] at 6.  Dewberry Group claims to use these four marks—

the Group, Office, Living, and Studio Marks (collectively, the "Infringing Marks")—"to

represent the Class-A office and multifamily/retail development projects as well as the internal

aesthetic design services and project management services provided by Dewberry Group through

Studio Dewberry."  *See* Dewberry Group's Interrog. #18 Resp. [attached hereto as *Exhibit C*] at

7.  Dewberry Group's use of the Infringing Marks forms the basis of Dewberry's trademark

infringement claims.  Dewberry bases its breach-of-contract claim on (a) Dewberry Group's use

of the Infringing Marks and "Dewberry Capital" in connection with any architectural or

engineering services in multiple jurisdictions, and (b) Dewberry Group's use of any mark other

than "DCC" for real estate development services in Virginia.

 Dewberry Group provides real estate development services for over twenty properties.

*See* Dewberry Group's Interrog. ##8–9 Resps. [*Exhibit B*] at 11–13.  Dewberry Group concedes

its use of the Infringing Marks for some of those properties.  *See* Dewberry Group's Interrog. #4

Resp. [*Exhibit B*] at 6; Dewberry Group's Interrog. #18 Resp. [*Exhibit C*] at 7–8.  Dewberry

limited its subpoenas at issue to seek documents evidencing Dewberry Group's services at *only*

*three* of these properties:  (1) Azalea Square in Richmond, Virginia; (2) Ortega Park in

Jacksonville, Florida; and (3) the Campanile Building in Atlanta, Georgia.[2]

---

[2]    Dewberry Group claims "these subpoenas seek the production of many of the same irrelevant documents and communications that [Dewberry] first sought from Dewberry Group in its third set of requests (and to which Dewberry Group objected)."  *See* Dewberry Group's Mem. in Supp. [ECF# 35] at 3.  If there is any overlap, Dewberry Group has waived its right to challenge the discovery of documents for these three properties on relevance grounds.  Dewberry issued a specific request seeking documents for each property and Dewberry Group did not assert a relevance objection.  *See* Dewberry Group's Objections to Reqs. ## 46, 49–50 [ECF# 35-1] at 54, 56–57 (asserting only "overly broad and unduly burdensome" objections).

**Azalea Square in Richmond, Virginia**.  Dewberry's subpoena to Bowman Consulting Group, Ltd. ("Bowman") seeks documents that are relevant and materials to its claims in this case.  Dewberry Group serves as the real estate developer and services provider for Azalea Square.  *See* Dewberry Group's Interrog. #9 Resp. [***Exhibit B***] at 13.  Dewberry Group's communications with this third party will reveal the extent that Dewberry Group used the Infringing Marks in commerce in connection with Azalea Square.

For its breach-of-contract claim, Dewberry's subpoena seeks documents related to subdivision and redevelopment efforts at Azalea Square to reveal whether Dewberry Group has used a name or mark other than "DCC" in Virginia.  Dewberry Group has negotiated contracts, sold a portion of the property, and resolved a lien in connection with Azalea Square.  *See* Dewberry Group's Interrog. #11 Resp. [***Exhibit B***] at 17.  Dewberry Group tries to downplay Bowman's involvement, stating that Bowman "is a consultant that performed a survey" at Azalea Square "in connection with a sale of a portion of the property to adjacent property owner, Westminster Canterbury."  *See* Lyddan Decl. [ECF# 35-2] ¶ 12.   Bowman did a lot more than just a "survey."

As part of the sale, Dewberry Group subdivided Azalea Square in 2018.  *See* Westminster Canterbury Plans To Buy Part Of The Former Azalea Mall Property To Expand Its Senior Community, *Richmond Times-Dispatch* (May 17, 2018) https://richmond.com/westminster-canterbury-plans-to-buy-part-of-the-former-azalea-mall-property-to-expand-its/article_3806743c-d233-5c77-82f3-10a03193d0a6.html  (Westminster Canterbury "signed a contract May 10 to buy the property from Dewberry Capital Corp." and "[b]efore the sale can be completed, ***Dewberry Capital must subdivide the 10.6-acre tract*** from the rest of the property."

(emphasis added)).  Dewberry Group did so using the name and mark "Dewberry Capital" and retained Bowman to assist with the subdivision work:



*See* Azalea Square Deed to Westminster Canterbury [attached hereto as **Exhibit D**] at 5.  The tax parcel database of Henrico County, Virginia lists "Dewberry Capital" as the contact for Azalea Square's affairs:



https://realestate.henrico.us/ords/cam/f?p=510101:5:::NO:5,7,8:P5_ROWNUM,P5_SEARCH_TYPE:2,1

 Dewberry Group therefore breached the settlement agreement by performing real estate development and/or related services in Virginia using a name or mark other than "DCC."  As is

apparent from its pleadings, discovery responses, and even in its motion here, Dewberry Group has not been fully candid about the nature and extent of its real estate development-related activities in Virginia and elsewhere, making it critical for Dewberry to seek discovery from third parties, like Bowman, who were involved in such activities.

A separate breach exists to the extent those documents reveal that Dewberry Group engaged in architectural or engineering services at Azalea Square using the word DEWBERRY. Dewberry Group argues that it "has not held an active architectural or engineering license and has not directly employed a licensed architect or engineer for the purposes of rendering architectural services under the Dewberry Group name." *See* Dewberry Group's Mem. in Supp. [ECF# 35] at 6.  The absence of an architectural license or licensed architect does not let Dewberry Group off the hook.  The settlement agreement prohibits Dewberry Group from using the word DEWBERRY in connection with ***any*** architectural services, not just ***licensed*** architectural services.

Dewberry has already uncovered evidence that Dewberry Group has provided architectural services through its employee Lockie Brown.  Dewberry Group has held out Mr. Brown as its "in-house architect" in multiple communications with the City of Charlottesville related to Dewberry Group's Laramore property.  *See* Charlottesville FOIAed Emails [attached hereto as ***Exhibit E***].  Further, Mr. Brown executed a certificate stating he is "an authorized and licensed Architect" and making compliance representations about "the plans and specification for the Dewberry Building Horizontal Property Regime" in connection with Dewberry Group's Dewberry Charleston property.  *See* Licensed Architect's Certificate [attached hereto as ***Exhibit***

**F**].[3]  Mr. Brown executed this certificate in 2016 holding himself out as a licensed architect even though his architecture "license[] lapsed in 2015."  *See* Dewberry Group's Interrog. #12 Resp. [***Exhibit B***] at 19.  Finally, Dewberry Group's *website* says Mr. Brown "is a registered architect and member of the American Institute of Architects (AIA)" and "Mr. Brown's focus has expanded to include Studio Dewberry, where he and a team of designers, architects and brand experts work closely with Mr. and Mrs. Dewberry [to] collaborate on the design of all major development projects."  *See* http://www.dewberrygroup.com/about-dewberry/ (click on "Lockie Brown" for the bio).  It is illegal in Virginia (as in virtually all other states) even to imply that a person or entity is an "architect" in any advertising or promotional material, let alone to hold oneself out as an "architect" by using that title unless they hold a current and valid architectural licensure.  *See, e.g.*, Va. Code §§ 54.1-406(C); 54.1-402.2.

Also of no moment is Dewberry Group's claim "there are no architectural or engineering plans, specifications, or drawings stamped by Dewberry Group, its predecessor-in-interest, Dewberry Capital Corporation, or any employee rendering services" related to Azalea Square. *See* Dewberry Group's Mem. in Supp. [ECF# 35] at 6.  Dewberry is not required to take Dewberry Group at its word in discovery, especially when the evidence that Dewberry has uncovered so far and outlined above suggests that Dewberry Group cannot be trusted.

**Ortega Park in Jacksonville, Florida**.  Dewberry's subpoenas to Marietta Sand Corporation and RLH Construction, LLC seek documents to establish its trademark infringement

---

[3]   Although Mr. Brown's signature appears under the firm of McMillan Pazdan Smith on this 2016 certificate, Mr. Brown in fact "joined Dewberry Group in 2014 after more than thirty years in private architectural practice."  *See* http://www.dewberrygroup.com/about-dewberry/  (click on "Lockie Brown" for the bio).  Mr. Brown's LinkedIn page confirms that he left the McMillan firm in August 2014 and joined Dewberry Group that same month.  *See* Brown LinkedIn Page [attached hereto as ***Exhibit G***].  Thus, Dewberry Group—not the McMillan firm—employed Mr. Brown at the time of this certificate's execution.

claims.  Dewberry Group's communications with these third parties will reveal the extent that Dewberry Group used the Infringing Marks in connection with Ortega Park.

The documents sought are also relevant to the likelihood of confusion between Dewberry and Dewberry Group's marks and services.  Dewberry performs stormwater management services and Ortega Park has suffered negative publicity from stormwater violations in connection with the Infringing Marks.  *Compare* Dewberry's Mark Registration [ECF# 1-2] at 2 (Dewberry's registered mark covers "waste management consultation services in the fields of storm water impact, waste management, and water resource management."), *with* Ortega Park Subcontractors Fined for Stormwater Violations, *Resident Community News* (Oct. 10, 2020) [ECF# 35-1] at 94–97 ("After six repeated violations of best management practices that would prevent sediment from flowing into the Ortega River, two subcontractors for Dewberry Group, the owner and developer of Ortega Park Mall on Roosevelt Boulevard, entered into a 'Consent Order' with the Florida Department of Environmental Protection.").[4]  As Dewberry Group acknowledges, a reporter contacted Dewberry about the stormwater violations at Ortega Park confusing Dewberry with Dewberry Group as the property's developer given the clear similarity of the two names.  *See* Dewberry Group's Mem. in Supp. [ECF# 35] at 10.

Ortega Park's stormwater violations also threaten irreparable harm to Dewberry's good will and reputation in the field of stormwater management services and is therefore relevant to Dewberry's request for injunctive relief.  Other construction problems at Ortega Park, as referenced in the article, are equally relevant to the topics of likelihood of confusion and irreparable harm.

---

[4]    A stormwater management industry publication—Storm Water Solutions—later republished this article.  *See* https://www.estormwater.com/bmp-maintenance/california-park-subcontractors-fined-storm-water-violations

Dewberry's subpoenas further seek documents to establish its breach-of-contract claim. The subpoenas seek permits, site plans, and other land-use or construction-related approvals to reveal whether Dewberry Group has performed architectural or engineering services at Ortega Park using the word DEWBERRY.

Dewberry Group argues the documents sought are irrelevant because it "is not the owner of the parcel at issue, was not cited, and paid no fines."  *See* Dewberry Group's Mem. in Supp. [ECF# 35] at 10.  Yet Dewberry Group holds itself out to the public as owning and developing Ortega Park using the Group and Living Marks.  *See* http://www.dewberrygroup.com/our-portfolio/dewberry-living/ ("Dewberry Group acquired the much-neglected Roosevelt Mall in 1997 and redeveloped it into a 300,000 square-foot open-air retail and lifestyle hub . . . . With renovations currently underway Ortega Park will grow to approximately 750,000 sf of upscale residential, office, shopping, dining, and lifestyle experiences . . .").  Moreover, the fact that Dewberry Group's subcontractors—rather than Dewberry Group itself—technically were cited for stormwater violations and paid the fines does not make those documents irrelevant.  The public connection of the stormwater violations to Dewberry Group makes these documents highly relevant to the likelihood of confusion and irreparable harm.[5]

Dewberry Group tries to discount the reporter's confusion of Dewberry with Dewberry Group as Ortega Park's developer because "the reporter is not a customer for the services of

---

[5]   In fact, news articles have identified Dewberry Group as Ortega Park's developer and frequently refer to Dewberry Group as "Dewberry"—which is Dewberry's registered name and mark by which it operates—thus making the likelihood of confusion even more apparent.  *See, e.g.*, Roosevelt Square Will Be Transformed Into Ortega Park, *Jacksonville Daily Record* (Mar. 26, 2019) https://news.wjct.org/post/roosevelt-square-will-be-transformed-ortega-park ("Dewberry has applied for five permits to build or renovated buildings at" Ortega Park and "Dewberry bought the mall in 1997 and redeveloped it into a 300,000 square-foot open-air retail and lifestyle hub.").

either Party in this case." *See* Dewberry Group's Mem. in Supp. [ECF# 35] at 10.  Dewberry

Group applies a wrong and outdated confusion test.  Congress amended the Lanham Act in 1962

to expand the confusion test to the general public rather than just the parties' purchasers or

customers.  *See AMP Inc. v. Foy*, 540 F.2d 1181, 1184 n.5 (4th Cir. 1976) ("The Lanham Act

was amended in 1962 by eliminating the words 'purchasers as to the source of origin of such

goods or services' following 'or to deceive' in s[ection] 1114(1)(a).");  *Marathon Mfg. Co. v.*

*Enerlite Prod. Corp.*, 767 F.2d 214, 221 (5th Cir. 1985) ("In 1962, the quoted words were

deleted [] specifically to allow ***any kind of confusion*** in support of a trademark infringement

action." (emphasis added));  Restatement (Third) of Unfair Competition § 20 cmt. b (1995) ("To

be actionable under this Section, the confusion must threaten the commercial interests of the

owner of the mark, but it is not limited to the confusion of persons doing business directly with

the actor.").

      **The Campanile Building in Atlanta, Georgia**.  Dewberry's subpoenas to Atlantic

Capital Properties II, LLC ("Atlantic Capital") and Square Mile Capital Management LLC

("Square Mile Capital") seek documents to establish its trademark infringement claims.

Dewberry Group's communications with these third parties will reveal the extent that Dewberry

Group used the Infringing Marks in connection with Campanile.  Dewberry Group holds itself

out to the public as owning[6] and developing Campanile using the Group, Office, and Studio

Marks.  *See, e.g.*, http://www.dewberrygroup.com/our-portfolio/dewberry-office/ ("Following

---

[6]    Dewberry Group provides a declaration from Samuel Lyddan stating under oath that
"Campanile Property, LLC . . . owns a certain piece of real property known as The Campanile
Building in Atlanta, Georgia."  *See* Lyddan Decl. [ECF# 35-2] ¶ 8.  This statement is false.
Another Dewberry Group affiliate—Dewberry 1155 Peachtree, LLC—owned and conveyed this
property in 2013 to the Development Authority of Fulton County, which is a governmental body
unaffiliated with Dewberry Group.  *See* Campanile Limited Warranty Deed [attached hereto as
***Exhibit H***].  The Development Authority of Fulton County is the current owner of this property.

Dewberry Group's 2010 purchase [of Campanile], Dewberry Group and Studio Dewberry in collaboration with Cameron Steward Design embarked on a major renovation . . . [I]n 2019 Dewberry Group commenced the current transformative redevelopment.").

Dewberry Group claims that it offers only so-called in-house services to John Dewberry rather than to the public or to third parties. *See, e.g.,* Dewberry Group's Interrog. #4 Resp. [***Exhibit B***] at 6 ("Dewberry Group and Studio Dewberry provide services to Mr. Dewberry related to design, project management, and property management for all of Mr. Dewberry's active developments and properties. Studio Dewberry does not offer these services to unaffiliated entities for a fee or otherwise."); Dewberry Group's Interrog. #10 Resp. [***Exhibit B***] at 14 ("Dewberry Group does not market or sell it services under the Studio Mark because those services are offered only to John Dewberry and the properties he wholly or majority owns."). Dewberry Group's website undermines its in-house-only theory, stating that Dewberry Group's team "maintains a sharp focus on the company's key objectives, which translates to value-driven solutions across all sectors and success ***for clients around the globe***." *See* http://www.dewberrygroup.com/about-dewberry/ ("Who We Are" section) (emphasis added). The subpoenas seek documents to investigate this in-house-only theory, especially given Dewberry Group's contradictory statements made in its online marketing materials.

Dewberry Group provides services to both subpoena recipients. Square Mile Capital is a "financial lender" to Dewberry Group for "the purpose of renovating and leasing up The Campanile Building." *See* Dewberry Group's Mem. in Supp. [ECF# 35] at 5; *see also* H.I.G. Realty Partners and Square Mile Capital Co-Originate $186 Million Loan Secured by Atlanta Office Asset, *Business Wire* (Jan. 30, 2020) [ECF# 35-1] at 157–58. Atlantic Capital and Dewberry Group formed a "partnership" or "new venture," including "asset management and

oversight of the capital program" related to Campanile.  *See* Atlanta Real Estate Veterans John Dewberry, Jim Meyer Form New Venture, *Atlanta Business Chronicle* (Aug. 30, 2017) [ECF# 35-1] at 141–43.  Thus, these third parties are investors, owners, or equity holders of Campanile and Dewberry's subpoena seeks contracts, promotional materials, letters of intent, and property reports and updates to identify the services that Dewberry Group provides to them.

Financial documents provided by Dewberry Group to these third parties are relevant for Dewberry's damages under 15 U.S.C. § 1117(a) in the form of Dewberry Group's profits for Campanile.  Further, the "Group Mark and Studio Mark have been used" in "financial packages" and "leasing packages submitted to financial institutions to obtain financing for John Dewberry's projects."  *See* Dewberry Group's Interrog. #10 Resp. [***Exhibit B***] at 14.  Dewberry Group also concedes that it provides "[f]inancing" services at Campanile and other properties located in Atlanta, Georgia, see Dewberry Group's Interrog. #8 Resp. [***Exhibit B***] at 11, and that its "primary business is to provide certain services, including financial management . . . to certain corporate entities that own real property."  *See* Dewberry Group's Mem. in Supp. [ECF# 35] at 4.  The financial documents will reveal the extent to which Dewberry Group uses the Infringing Marks in providing services to these third parties.

Dewberry's subpoenas also seek documents to establish its breach-of-contract claim.  The subpoenas seek permits, site plans, and other land-use or construction-related approvals to reveal whether Dewberry Group has performed architectural or engineering services at Campanile using the word DEWBERRY.

### B.    Dewberry's Subpoenas Are Not Overbroad.

Dewberry Group argues the subpoenas seek "documents and communications exchanged between the third-party and Dewberry Group itself" and Dewberry "must first seek production of these documents from" Dewberry Group directly.  *See* Dewberry Group's Mem. in Supp. [ECF#

35] at 6, 9.  Dewberry Group cites three unpublished district court cases in support of its

argument, two of which are from other jurisdictions.  *See* Dewberry Group's Mem. in Supp.

[ECF# 35] at 9.  The case from the Eastern District of Virginia—*ThompsonMcMullan*—is

unpersuasive.  As Dewberry Group notes, the court stated "[t]here is no reason to burden a third

party with discovery when the opposing party has **all** of the information requested."

*ThompsonMcMullan*, 2016 WL 1071016, at *8 (emphasis added).  Dewberry Group does not and

cannot claim that it has **all** of the documents requested by the subpoenas.

As explained above, Dewberry Group does not have standing to raise overbroad or

burden issues with the subpoenas.  The subpoenas do not seek Dewberry Group's files and

Dewberry Group is not gathering or producing them.  *See Bland v. Roberts*, No. 4:11-CV-45,

2011 WL 13228485, at *1 (E.D. Va. Nov. 17, 2011) ("At best, the defendants imply that

production of the requested materials by the city of Hampton would be duplicative of production

by the defendants themselves and therefore an undue burden.  But the defendants do not have

standing to vindicate the rights of subpoena recipient on the ground that compliance will impose

an undue burden on the recipient.").  That is precisely the reason for the rule that a party does not

have standing to challenge a third-party subpoena except on very narrow grounds of privilege or

confidentiality.

Dewberry Group next argues the subpoenas use the word "all" when seeking documents

and this word alone makes the subpoenas "facially overbroad."  *See* Dewberry Group's Mem. in

Supp. [ECF# 35] at 9 (citing *Singletary* and *ThompsonMcMullan*).  Neither case holds that the

word "all" renders a subpoena facially overbroad, as Dewberry Group suggests.  Rather, both

cases say that subpoenas not limited to relevant documents are overbroad.  *See Singletary*, 289

F.R.D. at 241 (subpoenas "seeking Plaintiff's entire employment file from his former employers,

are not limited to seeking only those documents relevant to this FLSA overtime compensation

action or the claims based upon an oral employment contract, they are overly broad on their

face."); *ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *6 (subpoena targeted at documents in

another litigation must impose parameters limiting the subpoena's requests to relevant evidence).

 Dewberry has narrowly tailored its subpoenas to documents relevant to its trademark

infringement and breach-of-contract claims as explained above.  Dewberry also limited each

subpoena to specific Dewberry Group property and instructed each recipient to apply a date

range restriction on documents:

| Third Party | Date Range | Citation |
|---|---|---|
| Marietta Sand Corporation | January 1, 2018 – Present | ECF# 35-1 at 92 |
| RLH Construction, LLC | January 1, 2018 – Present | ECF# 35-1 at 110 |
| Atlantic Capital Properties II, LLC | January 1, 2016 – Present | ECF# 35-1 at 138 |
| Square Mile Capital Management LLC | January 1, 2018 – Present | ECF# 35-1 at 154 |
| Bowman Consulting Group, Ltd. | January 1, 2016 – Present | ECF# 35-1 at 170 |

 Even if Dewberry Group's "all" argument can be construed as challenging the volume of

documents requested, volume alone is not a basis to quash a subpoena.  *See* 9A Charles Alan

Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 2459 (3d ed.

1998) ("[A] subpoena need not necessarily be quashed because the documents themselves are

voluminous and cumbersome and significant difficulty and expense will be involved in

producing them.  Subpoenas of this kind are inevitable in the type of highly complex cases that

are now common in the federal courts.").  Nor did Dewberry Group offer any proof of the

volume.  *See Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs*, No. 1:11-MC-35,

2012 WL 112325, at *3 (N.D.W. Va. Jan. 12, 2012) (declining to quash a subpoena based on

"broad assertions that the documents sought were voluminous and would be time consuming and

expensive to produce" because "the movants failed to provide any corroborating specific

evidence to show with particularity the actual extent of time, effort and cost that would go into production").

**V.      Dewberry Requests Its Reasonable Expenses For Opposing Dewberry Group's Defective And Baseless Motion.**

Procedurally, Dewberry Group's motion fails on standing, burden of proof, and venue grounds.  It also fails on the merits because the subpoenas are limited to seek documents relevant and material to Dewberry's claims.  The day before filing, Dewberry detailed these defects for Dewberry Group.  *See* Jan. 28, 2021 Dewberry Email [attached hereto as ***Exhibit A***].  Dewberry Group filed its motion anyway and did so without communicating with the subpoena recipients to determine what responsive documents they might actually have, or whether they intend to object to the subpoenas.  *See* Jan. 28, 2021 Dewberry Group Counsel's Email [attached hereto as ***Exhibit I***] ("Do you know if the subpoenas have been served, yet?  Our side has not heard from anyone and, quite frankly, we expected to.").  Such an effort could have made Dewberry Group's motion unnecessary and relieved the burden on Dewberry and the Court to respond to it.

Accordingly, Dewberry requests an award of its reasonable expenses for having to expend time and resources opposing it.  *See Robinson v. Med. Univ. of S.C.*, No. CV 2:05-1558, 2007 WL 9747302, at *2 (D.S.C. Feb. 14, 2007) (granting attorney's fees and costs for opposing successfully a motion to quash a third-party subpoena where the movants "have no standing and have made no showing to support their motion to quash.")

## <u>CONCLUSION</u>

For the reasons discussed above, the Court should deny Dewberry Group's motion and award Dewberry its reasonable expenses for opposing it.

DATED: February 3, 2021

**DEWBERRY ENGINEERS INC.**
**By Counsel**

By:  ___/s/  Arthur E. Schmalz_____

Arthur E. Schmalz (VSB # 36014)
Julie M. Peters (VSB # 47282)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. N.W.
Washington, D.C. 20037
Tel: (703) 714-7467
Fax: (202) 778-2201
aschmalz@hunton.com
jpeters@hunton.com

Stephen P. Demm (VSB # 30534)
HUNTON ANDREWS KURTH LLP
951 East Byrd Street
Richmond, VA 23219
Telephone: (804) 788-8331
Fax: (804) 343-4513
sdemm@huntonak.com

Alan B. Croft (VSB # 9209)
Ralph M. Tener (VSB # 25430)
MCCANDLISH LILLARD, P.C.
11350 Random Hills Road, Suite 500
Fairfax, Virginia, 22030
PH: (703) 273-2288
FX: (703) 273-4592
acroft@mccandlaw.com
rtener@mccandlaw.com

*Counsel for Plaintiff Dewberry Engineers, Inc.*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2021, I caused a copy of the foregoing to be electronically

filed using the CM/ECF system, which will then send a notification of such filing to the following:

John P. Rowley III
1775 Pennsylvania Avenue, NW
Suite 1000
Washington, DC 20006
Telephone: 202.677.4948
Facsimile: 202.677.4949
John.Rowley@agg.com

Stephen M. Dorvee
Andrew C. Stevens
171 17th Street NW
Suite 2100
Atlanta, GA 30363-1031
Telephone: 404.873.8500
Facsimile: 404.873.8501
Stephen.Dorvee@agg.com
Andrew.Stevens@agg.com

*Counsel for Defendant*
*Dewberry Group, Inc. f/k/a Dewberry Capital Corporation*

By:  /s/  Arthur E. Schmalz