IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| DEWBERRY ENGINEERS INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DEWBERRY GROUP, INC. F/K/A ) <br> DEWBERRY CAPITAL CORPORATION. ) <br> ) <br> Defendant. ) <br> ) <br> ) | Civil Action No. 1:20-cv-610-LO-IDD |

## DECLARATION OF ALAN B. CROFT IN SUPPORT OF PLAINTIFF DEWBERRY'S PETITION FOR ATTORNEYS' FEES

I, Alan B. Croft, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over 18 years of age and otherwise competent to make this declaration.

2. I have personal knowledge of all matters alleged herein.

3. I am Senior Counsel at the law firm of McCandlish Lillard, P.C. ("McCandlish"), one of the counsel of record for Dewberry Engineers, Inc. ("Dewberry") in this matter. McCandlish is a relatively small, Northern Virginia law firm with 19 lawyers who practice in two offices located in Fairfax (our main office), and Leesburg. Our firm has a diversified practice, ranging from litigation in state and federal courts in the area, to real estate and business transactional work, trusts and estates, taxation, elder law and domestic relations.

4. I received my B.S.E.E. from Washington University in 1966 and my J.D. from American University Washington College of Law in 1970. I am an active member of the bars of District of Columbia, and Virginia.

5. I am admitted to practice in all courts in the Commonwealth of Virginia, the District of Columbia, the United States District Court for the Eastern District of Virginia, and the United States Court of Appeals for the Fourth Circuit. Over the course of my career, I have litigated numerous cases in this Court involving a variety of business and commercial disputes, including bench and jury trials.

6. I was involved in and oversaw the work done by McCandlish attorneys and staff in preparing the Complaint that was filed in May 2020 against Dewberry Group, Inc., formerly known as Dewberry Capital Corporation ("Dewberry Group") and performed thereafter throughout the remainder of the case. I submit this declaration in support of Dewberry's petition for an award of attorneys' fees and costs related to the litigation in this case.

7. I understand that Dewberry is filing its Bill of Costs, and I confirm that Bill of Costs Exhibit 1 is a true and correct copy of a Cost Report from my firm, which confirms payment of the $400 filing fee, for which Dewberry reimbursed us. Furthermore, attached as **Exhibit C** to Dewberry's Motion for Attorneys' Fees are true and correct copies of the McCandlish billing invoices issued to Dewberry for this case that are being submitted in connection with Dewberry's fee claim. These are accurate and complete copies of the invoices billed to and paid by our client, except with regard to a few minor redactions of information that would reveal attorney mental impressions, litigation strategies or other similar information protected by the work-product doctrine. More particularly, these are invoices for fees for work our firm performed for Dewberry from October 2019 through January 2022. As explained below, our firm's work prior to October 2019 was not substantially related to the preparation of the Complaint in this case and initiating this lawsuit. Accordingly, the fees and charges associated with that work are not being included in Dewberry's attorneys' fee application.

8. I am familiar with our firm's billing practices in general, and, in particular, with the invoices submitted to Dewberry for payment for legal services performed in this case. Consistent with our firm's typical practice, we usually billed Dewberry monthly for our services, although occasionally some time entries from an earlier month would be included in a subsequent month's billing, particularly where relatively few hours had been worked the previous month. For litigation like the present case, we typically charge our clients by the hour for our services, and did so here.

9. Our firm's hourly rates for our attorneys are set and periodically adjusted by the firm's managing shareholders, based on their market research and knowledge of rates charged by comparable firms and attorneys in the area.

10. The hourly fees charged to Dewberry by our attorneys performing work in the present litigation are reflected in the invoices attached as **Exhibit C** to Dewberry's Motion for Attorneys' Fees, and discussed in further detail below. I believe those rates, as well as the fees charged for the work performed as reflected on the invoices were fair and reasonable, particularly given the nature and circumstances of this case, which was a complex trademark and breach of contract action, against an opponent that litigated the case very vigorously. That conclusion is also supported by Dewberry's attorneys' fee expert, Craig C. Reilly, Esq., in his Declaration submitted in connection with Dewberry's attorneys' fee application.

11. From late 2017 through much of 2019, McCandlish's work focused primarily on investigating various applications for "Dewberry" service marks that Dewberry Group filed with the United States Patent & Trademark Office ("USPTO"), preparing and sending cease-and-desist letters and related correspondence to Dewberry Group (then known as Dewberry Capital Corporation or DCC) regarding those applications, and thereafter preparing and submitting a

written protest to the USPTO regarding those applications. The vast majority of that work was performed by my partner, Ralph M. Tener, who is our firm's trademark and intellectual property law specialist, and who also had worked with Dewberry for many years in connection with its "Dewberry" service marks at issue in this case. His experience and credentials are discussed further below. Mr. Tener retired from our firm at the end of March 2022.

12. I was brought into the matter in late 2019 to assist with preparations for initiating a trademark infringement and breach of contract lawsuit against Dewberry Group. That work led to the Complaint which I and my McCandlish colleagues prepared and filed in this case in May 2020. We then prepared and served on Dewberry Group initial written discovery requests, and successfully moved to dismiss all of Dewberry Group's counterclaims, which the Court held to be barred by the terms of the parties' 2007 Settlement Agreement. During the spring/summer of 2020, we were also involved with settlement negotiations and discussions between the parties that proved to be unsuccessful. Additionally, we reviewed Dewberry Group's written discovery requests served on Dewberry in early October 2020, and prepared and submitted objections to them within 15 days, in accordance with the requirements of this Court's Local Rules.

13. Almost all of the above-described work from and after late 2019 was performed by myself, Mr. Tener, and Mark Abrajano, a litigation associate who worked with us on the case until his departure from the firm at the end of November 2020. We also had a relatively small amount of assistance from a summer associate, as well as from paralegal and professional staff for certain litigation-related tasks that they could perform more cost-effectively than attorneys.

14. As the case began to move into discovery after issuance of the Scheduling Order in mid-October 2020, it became apparent that settlement was unlikely and that the litigation was going to be significantly more intensive than had originally been expected or hoped. In

particular, it was clear that there was going to be a very large volume of electronically stored information ("ESI") and hard copy documents that would have to be collected and produced by both sides, and in a short time. Our relatively small firm would have had difficulty handling those tasks effectively, particularly given that our firm's other experienced commercial litigators were fully occupied with other active litigation matters and unable to assist.

15. As a result, in late October 2020, Dewberry elected to retain Hunton Andrews Kurth LLP ("Hunton") to assume responsibility for the case as lead counsel. I fully concurred with and supported that decision in light of the circumstances described above. It was agreed by Dewberry and Hunton that our firm would continue as co-counsel, but in a support capacity, to provide assistance with Hunton's transition as lead counsel, and as may be necessary from time to time depending on the circumstances of the litigation.

16. Our firm's reduced role in the case from and after November 2020 is generally reflected in our firm's invoices attached as **Exhibit C** to Dewberry's Motion for Attorneys' Fees. There were, however, a few months where the circumstances of the case required our firm to provide a greater amount of support than in others. One example of this occurred in November 2020, when I and my colleagues were transitioning out of lead-counsel responsibilities and assisting the Hunton team in getting up to speed. Then, over a roughly five week period in March and April of 2021, when approximately 18 depositions were taken, I prepared for and took or defended four of them. These included defending the depositions of Dewberry's Chief Financial Officer and two other managerial-level employees, and taking the deposition of Douglas Dewberry, who was John Dewberry's brother and a former senior executive of Dewberry Group.

17. As previously noted, McCandlish's rates are based on market research and knowledge and are consistent with those of other firms comparable to ours. McCandlish calibrates its rates to the market based on head-to-head competition, knowledge of rates charged by our competitors, and surveys of law firms, and adjusts its rates periodically (generally annually) accordingly. McCandlish's rates are premised upon prompt payment and therefore do not include any compensation for delay. In this case, Dewberry always paid all of our invoices promptly, including the invoices attached as **Exhibit C** to Dewberry's Motion for Attorneys' Fees.

18. The rates for each individual timekeeper are a function of his or her level of experience, reputation, and practice area. They are consistent with market rates charged by similarly experienced attorneys and other legal staff performing similar work.

19. My hourly rate in this matter was $525, and my experience and credentials as a commercial litigation attorney were summarized previously. Pertinent information concerning the experience and credentials of the other two McCandlish attorneys who were primarily responsible for work in the present case, Mr. Tener and Mr. Abrajano, is provided as follows:

- **Ralph M. Tener** is a principal at McCandlish and head of the firm's Information Technology Group. Mr. Tener obtained his B.A. from Michigan State University in 1969 and his J.D. from the University of Virginia School of Law in 1978. Mr. Tener has represented Dewberry on service mark-related matters for many years. For example, he handled the filing and prosecution of Dewberry's service mark applications with the USPTO (the "Dewberry Marks" at issue in this case), together with periodic maintenance filings thereafter. With regard to the dispute with Dewberry Group, from approximately late 2017 through the fall of 2019, Mr. Tener prepared cease and desist correspondence to Dewberry Group regarding its infringing

"Dewberry" service mark applications at issue in this litigation, and also submitted letters of protest relating thereto to the USPTO; he conducted pre-filing research and assisted in the drafting the Complaint in this case, and participated in all aspects of the early phases of the litigation; and provided assistance and guidance on various trademark-specific issues thereafter, including with regard to settlement discussions and in connection with arguments and positions asserted in the parties' motions and briefs. In 2019 through the end of 2020, Mr. Tener's hourly was $525, and increased to $550 from and after 2021 to adjust for seniority and market conditions.

- **Mark Abrajano** was a litigation associate at McCandlish who departed the firm at the end of November 2020 to pursue other opportunities. He obtained his bachelor's degree from Rensselaer Polytechnic Institute in 2010 and his J.D. from George Mason University Antonin Scalia Law School in 2016. His work in this matter primarily included assisting Mr. Tener and Mr. Croft in the early phases of this litigation, including drafting and filing the Complaint, researching and drafting Dewberry's motion and supporting briefs to dismiss Dewberry Group's counterclaims, preparing written discovery requests to Dewberry Group, objections to Defendant's discovery, and assisting with responses to Defendant's discovery requests. Mr. Abrajano's hourly rate during this matter was $275.

20. McCandlish requires that all attorneys and other timekeepers to contemporaneously record the time they spend on each client matter and have that time entered into our computerized billing system. The normal practice for billing professionals is to record all activities on a client matter in one daily entry with the total time for the day recorded. This method of time recordation is acceptable to the firm's regular clients.

21. Our accounting staff prints from our computer system billing summaries for each matter that include all the time for timekeepers and expenses charged to that matter. Using these computer-generated summaries, the billing partner reviews the time spent, the services performed, and the expenses incurred on the matter. The billing partner edits the time and deletes charges for time or expense which in the billing partners' judgement should not be billed. The billing partner, with the assistance of others working on the matter, may make additional edits to supplement or clarify the time descriptions, correct spelling or grammatical errors, or eliminate time and expenses that were attributed to the case erroneously.

22. In this case, McCandlish's time entries and charges reflected in our invoices attached as **Exhibit C** to Dewberry's Motion for Attorneys' Fees were recorded and reviewed in accordance with McCandlish's normal practices described above. Mr. Tener and/or myself also reviewed them and exercised billing judgment to eliminate time spent on work that was duplicative, excessive, unnecessary, or lacking in sufficient detail.

23. Based on my knowledge and experience described previously, as well as my familiarity with this litigation as co-counsel throughout the entire case, I believe that the fees that McCandlish billed to Dewberry for its work relating to the lawsuit were and are fair and reasonable. Nonetheless, I understand that, under the hypothetical lodestar analysis applied by this Court for attorneys' fee applications, further adjustments may be required. Accordingly, I concur with the analysis and adjustments of Dewberry's fee expert, Mr. Reilly, that the appropriate lodestar amount for McCandlish's fees in this case is $258,962.00.

[the remainder of this page is intentionally blank; execution page to follow]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: April 29, 2022

_____
Alan B. Croft