IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DEWBERRY ENGINEERS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-610-LO-IDD |
| ) | |
| DEWBERRY GROUP, INC. F/K/A ) | |
| DEWBERRY CAPITAL CORPORATION. ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER GRANTING PERMANENT INJUNCTION

This matter comes before the Court on the motion of the Plaintiff, Dewberry Engineers Inc. ("Dewberry"), for entry of a permanent injunction. Dkt. 188. For the reasons stated herein, and in accordance with Fed. R. Civ. P. 65(d), Dewberry's motion is **GRANTED**, and the Court hereby permanently enjoins the Defendant, Dewberry Group, Inc. f/k/a Dewberry Capital Corporation ("Dewberry Group") together with its officers, agents, servants, employees, and attorneys, and any other persons or entities who are in active concert or participation with Defendant or the persons or entities just described, from the acts described below in Section D of this Order.

*A. Procedural and factual background.*

Dewberry's Complaint [Dkt. 1] asserted five counts against Dewberry Group. Counts I through IV alleged that Defendant is infringing Dewberry's federally registered service marks (U.S. Reg. Nos. 2,991,043 & 2,991,044) (the "Dewberry Marks"), and Count V asserted that Defendant breached and is continuing to violate the parties' February 26, 2007 Confidential

Settlement Agreement ("CSA"). By Order dated August 11, 2021 [Dkt. No. 174], this Court granted summary judgment to Dewberry on all five counts of its Complaint and denied Dewberry Group's motion for summary judgment. In addition to other relief requested in its Complaint, Dewberry requested entry of a permanent injunction to restrain the Defendant in various ways from continuing to infringe its registered service marks and continuing to violate the CSA. *See* Dkt. 1 at 33-34, Req. for Relief ¶¶ 2 & 3.[1] A trial on the issue of damages is scheduled to begin in October. *See* Dkt. No. 175.

### B. *Reasons for issuing the injunction.*

The Lanham Act vests the Court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). To grant Dewberry's motion for a permanent injunction, the Court must find that Plaintiff has "(1) suffered irreparable harm; (2) its remedies at law are inadequate; (3) the balances of the hardships favors [Dewberry]; and (4) the public interest would not be disserved by the injunction." *Reynolds Consumer Prods., Inc. v. Handi-Foil Corp.*, Civ. No. 1:13-cv-214, 2014 U.S. Dist. LEXIS 98059, at *35 (E.D. Va. July 18, 2014) (citing *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011)). The parties' summary judgment briefs addressed Plaintiff's request for and entitlement to injunctive relief,[2] and for the reasons

---

[1] Dewberry also specifically requested entry of a permanent injunction in its motion for summary judgment. *E.g.*, Dkt. 85 at 38-40; Dkt. 153 at 35-36.

[2] Notably, in arguing that Dewberry should be precluded from any monetary recovery, Defendant's own motion for summary judgment specifically asserted that "an injunction would

(continued...)

explained below, the Court finds that the uncontroverted facts presented in Dewberry's motion for summary judgment, together with the Court's findings and rulings in its August 11, 2021 Order [Dkt. 174], support the issuance of the permanent injunction requested by the Plaintiff.

*1. Irreparable harm and lack of adequate remedy at law.*

The Court's summary judgment findings fully support the conclusion that, as a matter of law, Dewberry will suffer irreparable harm if the Defendant is not permanently enjoined from continued infringement of the Dewberry Marks and continued violations of the CSA.

In its August 11 Order, the Court found that the names and marks that Defendant adopted and continues to use, namely "Dewberry Group," "Dewberry Office," "Dewberry Living" (including the versions of those names/marks preceded by a "D"-in-a-circle logo that Defendant attempted to register with the U.S. Patent and Trademark Office) and "Studio Dewberry," (collectively, the "Infringing Marks") all infringe the Dewberry Marks, and that Defendant's use of these marks also violates the CSA. *See* Order, Dkt. 174 at 10, 19-20. In particular, the Court found,

> that a likelihood of confusion exists: Plaintiff has an arbitrary mark, making it strong in the marketplace; the predominant feature of the parties' marks are identical, namely "Dewberry;" the parties both engage in real estate development services; the parties operate in overlapping markets; the parties' similar forms of advertising, market to the same kinds of parties. There is sufficient evidence that the Defendant had the intent to infringe; sufficient evidence of actual confusion; and evidence that there is a high likelihood of confusion in the general public. These all weigh in favor of a finding of a likelihood of confusion.

---

also be an adequate remedy" in the event that it were ultimately found liable for infringement. Dkt. 71 at 34.

*Id.* at 19 (emphasis added). Further, this Court found that "no reasonable jury could, based on the evidence presented, find that no likelihood of confusion exists between the parties' marks." *Id.*

In addition, this Court specifically found that Dewberry's reputation and goodwill is being harmed by Dewberry Group's infringement and violations of the CSA. *Id.* at 19. The Court cited undisputed evidence of "a number of negative articles, in both local and national publications, about Defendant, who is referred to by Plaintiff's mark," as well instances of actual confusion among the public and both parties' clients and customers, such as "a news reporter, UVA client representatives [a client of Dewberry's], a commercial tenant [a client of Defendant's], a wealthy businessman, a vendor, and a contractor." *Id.* at 18-19. The evidence established that "Plaintiff has spent $125 million on promotional expenditures from 2015-2019," and that Plaintiff's "Dewberry" name and mark are associated by its clients with "positive notions of its 'expertise,' 'quality,' 'size/strength,' and 'people . . . .'" *Id.* at 19. The Court also found that the Plaintiff's "investment into [its] goodwill" is "significant," and that "the confusion [resulting from Defendant's use of the Infringing Marks], at best dilutes this investment." *Id.* Even "[m]ore concerning" is that "Defendant's negative publicity damages [the Plaintiff's] reputational standing," given the likelihood of confusion established by the evidence. *Id.*[3]

Where, as here, a defendant has been found liable for trademark infringement, traditionally "injunctive relief has been the 'preferred remedy to insure [sic] that future violations

---

[3] Plaintiff's motion for summary judgment presented uncontroverted declarations and documentary evidence establishing that it will continue to suffer irreparable harm from an inability to control its business reputation unless the Defendant is enjoined from further infringement of the Dewberry Marks. *See, e.g.*, M. Johnson Decl. [Dkt. 84-7] at ¶¶ 49, 55; D. Maxwell Decl. [Dkt. 91-2] at ¶ 40.

4

will not occur.'" *Reynolds Consumer Prods.*, 2014 U.S. Dist. LEXIS 98059, at *35 (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995)) (alteration in original). While irreparable harm alone does not automatically trigger injunctive relief, this Court has "continued to find that 'irreparable harm is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element of an infringement case.'" *Id.* at 35-36 (quoting *Diamonds Direct USA, Inc. v. BFJ Holdings, Inc.*, 895 F. Supp. 2d 752, 761 (E.D. Va. 2012)).

In the present case, the Court has already found that Defendant's use of its Infringing Marks creates a likelihood of confusion with the Dewberry Marks, supporting a finding of irreparable injury to Dewberry. *Id.* Furthermore, the Trademark Modernization Act of 2020, PL 116-260 (Dec. 27, 2020) 134 Stat. 1182, Subtitle B, § 226, modified 15 U.S.C. § 1116(a) to provide that a plaintiff like Dewberry seeking a permanent injunction "shall be entitled to a presumption of irreparable harm upon a finding of [trademark infringement] in the case of a motion for a permanent injunction." 15 U.S.C. § 1116(a). The Defendant failed to rebut the presumption of irreparable harm in opposition to Dewberry's summary judgment motion, which, as noted above, specifically requested injunctive relief. More importantly, as previously noted, the summary judgment record affirmatively established as a matter of law that Dewberry Group's infringement, coupled with its negative publicity, "damages [Dewberry's] reputational standing," and "dilutes" the goodwill that Plaintiff has made a significant investment in establishing. Dkt. 174 at 19.

Indeed, because a "likelihood of confusion 'primarily represents an injury to reputation,'" this Court has noted that "infringement gives rise to irreparable injury, in that plaintiff has lost control of its business reputation . . . and there is an inherent injury to the good will and

5

reputation of the plaintiff.'" *Reynolds*, 2015 U.S. Dist. LEXIS 98059, at *36-37 (quoting *Lone Star*, 43 F.3d at 939). As in *Reynolds*, the Court finds in the present case that irreparable harm constitutes an "ongoing injury [that] must be cured by way of an injunction." *Id.* at *37. Indeed, the "finding of a likelihood of confusion demonstrates a palpable risk of continuing and future harm [which is] the exact type of harm meant to be remedied by injunctive relief." *Id.; see also Blumenfeld Dev. Corp. v. Carnival Cruise Lines, Inc.*, 669 F. Supp. 1297, 1321 (E.D. Pa. 1987) ("[I]njunctions are appropriate in trademark cases where the reputation of the senior user is left to the mercy of the junior user, whose business policies may not reflect the same sound judgment" as those of the senior user.) (citation and internal quotation marks omitted).

Furthermore, monetary damages, while appropriate as a remedy in addition to injunction, "are typically inadequate because while they may compensate plaintiffs for damages they have already incurred, monetary damages do not prevent further infringement from occurring." *RXD Media, LLC v. IP Application Dev.*, No. 1:18-CV-486, 2019 LEXIS 1044770, at *2 (E.D. Va. June 21, 2019). Indeed, "without an injunction, a plaintiff would 'suffer continued infringement'" and be forced to "bring successive suits to continuously recover damages from [the Defendant's] infringing use." *Id.* at *2-3 (citation omitted). Thus, in the present case, as in *RXD Media*, the Plaintiff "clearly [has] no adequate remedy at law." *Id.* at *3; *see also Noell Crane Sys. GmbH v. Noell Crane & Serv.*, 677 F. Supp. 2d 852, 857 (E.D. Va. 2016) ("[A] court may enjoin a party's action in order to . . . prevent multiplicity of suits.") (citation omitted). Notably, money damages in this case or in future cases would be an inadequate remedy at law, as injury to "'goodwill and future business . . . is difficult, if not impossible to measure fully.'" *See Dynamic Aviation Grp. Inc. v. Dynamic Int'l Airways, LLC*, No. 5:15-CV-00058, 2016 U.S. Dist. LEXIS 39248, at *89-90 (W.D. Va. Mar. 24, 2016) (citations omitted). Those observations

apply to the present case and demonstrate why the Plaintiff lacks an adequate remedy at law to redress ongoing infringement and breach of the CSA.[4]

The need for a permanent injunction to prevent continuing irreparable harm to Dewberry is further supported by the evidence that Dewberry Group intentionally infringed the Dewberry Marks. "The Defendant was aware of Plaintiff's mark, entered into the CSA but breached that agreement as part of its 'rebranding' efforts, and then re-adopted the Plaintiff's 'Dewberry' mark." Dkt. 174 at 15. As a junior user, Dewberry Group had "'an affirmative duty to select a mark that is not confusing,'" and when, as here, "'a defendant adopts a mark with full knowledge of the plaintiff's mark, intent is inferred.'" *Id.* (quoting *Teaching Co. Ltd. P'ship v. Unapix Ent., Inc.* 87 F. Supp. 2d 567, 583 (E.D. Va. 2000) (further citation omitted). The evidence of intentional infringement supports the conclusion that, unless the Defendant is permanently enjoined from doing so, it will continue to infringe the Dewberry Marks and violate the prohibitions in the CSA, resulting in continued irreparable harm to Dewberry.

Accordingly, entry of a permanent injunction in this case is necessary to prevent continuing irreparable harm to the Plaintiff's reputation and goodwill, injuries for which Plaintiff lacks an adequate remedy at law.

    *2. Balance of hardships.*

The balance of hardships factor weighs in favor of Plaintiff Dewberry and against the Defendant in light of the Court's rulings on summary judgment. An infringer like Dewberry Group "'possesses no legal right to continue [its] current course of conduct,'" and therefore cannot claim hardship from an injunction restraining that which it is legally prohibited from

---

[4] *See* C. Thomas Decl. [Dkt. 91-5] at ¶ 21.

doing. *RXD Media*, 2019 U.S. Dist. LEXIS 1044770, at *3. By contrast, in the absence of a permanent injunction, Dewberry will suffer irreparable harm to its reputation and goodwill.

### 3. Public interest.

Finally, entry of the permanent injunction requested by Dewberry serves the public interest. "In trademark cases, injunctions serve the public interest 'by preventing future consumers from being misled.'" *Id.* (citing *Lone Star*, 43 F.3d at 939); *see Comm'cns Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1251 (4th Cir. 1970), *cert. denied*, 400 U.S. 942 (1970)).

### C. Scope of the injunction.

The Court finds that the scope of the inunction requested by Dewberry and as set forth below is appropriate to redress the irreparable harm that would result if Defendant continued to use the Infringing Marks and violate the terms of the CSA. Enjoining Defendant's use of the Dewberry Marks and violations of the CSA is "justified by the 'safe distance' rule which posits that 'once a company commits an unfair practice it 'should thereafter be required to keep a safe distance away from the margin line.'" *RXD Media*, 2019 U.S. Dist. LEXIS, at *4 (citation omitted).

Additionally, the Court finds that Dewberry's request for injunctive relief is appropriate to redress the Defendant's breaches of the CSA and its trademark infringement, as "[l]oss of goodwill and industry reputation can constitute irreparable harm" for both breach of contract and trademark claims, and the Court's findings of likelihood of confusion and irreparable harm to Dewberry resulting therefrom "favors an injunction on both claims." *Dynamic Aviation Grp. Inc.*, 2016 U.S. Dist. LEXIS 39248, at *93-94; *see also Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 747 F. Supp. 2d 730, 739 (S.D. Tex. 2010) ("When a settlement agreement not to use a trademark is breached, the injury is irreparable and the legal remedy of damages is

inadequate due to the continuing injury to the goodwill of the mark."); *Long John Silver's, Inc. v. Wash. Franchise, Inc.*, No. 80-540-A, 1980 WL 30249, at *5 (E.D. Va. June 24, 1980) (holding that "Defendants' unauthorized use of plaintiff's trademarks gives rise to irreparable injury" for an infringement claim and a claim for breach of a franchise agreement's "no challenge" provision because "plaintiff has lost control of its business reputation" and "there is inherent injury to the good will and reputation of the plaintiff").

*D. Specific terms of the injunction and persons and acts restrained or required.*

It is **ORDERED** that Defendant Dewberry Group and its officers, agents, servants, employees, and attorneys, and any other persons or entities who are in active concert or participation with Defendant or the persons or entities just described, are hereby permanently and forever enjoined from:

1. using the name or mark DEWBERRY, or any name or mark that incorporates the name or mark DEWBERRY, including, but not limited to, any of the Infringing Marks and any mark that is otherwise confusingly similar to the Plaintiff's DEWBERRY marks, on or in connection with any real estate-related products or services, including but not limited to leasing of real estate, real estate investment, real estate management, real estate development, real estate site selection, architectural services, interior design and engineering services; *provided however*, except as prohibited by Section B.3 of the CSA[5] and any other provisions of this Order below,

---

[5] Section B.3 of the CSA states: "To the extent that [Defendant] performs any present or future real estate development or related services in the Commonwealth of Virginia, the State of Maryland, or the District of Columbia, it shall do so only under the name and mark DCC and not under the name or mark DEWBERRY CAPITAL."

Defendant is permitted to use its former DEWBERRY CAPITAL name and mark to the extent allowed by Section B.2 of the CSA, namely "in connection with its promotion, offering and performance of real estate development services as a real estate developer, including purchasing real property, arranging for the construction of commercial and residential buildings and mixed use properties, and leasing and managing properties." CSA, Section B.2. As stated in the Court's August 11 Order, however, the limited permission to use "Dewberry Capital" under CSA Section B.2 constitutes the full "extent to which the CSA granted permission to Defendant to use the Dewberry mark" in connection with real estate development and the specified real estate development-related services and activities, and does not authorize "other uses of the Plaintiff's Dewberry mark" in connection with such services or activities. Dkt. 174 at 9. Additionally, in accordance with this Court's August 11 Order and CSA Section B.10, in the event Defendant uses the "DEWBERRY CAPITAL" name or mark in the manner authorized by CSA Section B.2, "where feasible, [Defendant] shall continue to use its column logo in the [format specified in CSA Section B.10] . . . or a substantially similar format." Dkt. 174 at 7-8;[6]

2. otherwise competing unfairly with Dewberry by trading off of Dewberry's goodwill or business reputation;

3. using the word DEWBERRY in the name of, or as a mark for, any architectural and/or engineering company, or in connection with any architecture or engineering services; and

---

[6] The format of the "column logo" referenced in CSA Section B.10 appears as follows:



    4. conducting real estate development or related services in the Commonwealth of Virginia, the State of Maryland, or the District of Columbia under any name or mark that includes the word DEWBERRY.

For the avoidance of any doubt, and without limitation, the prohibitions and restrictions on using DEWBERRY described above in this Order extend to uses in connection with Defendant's advertisement or promotion of its business or services to any persons or entities or the public at large, including but not limited to uses: on or in any signs or signage located on or attached to real property, buildings or structures; on or in Defendant's current or future webpages, social media, electronic media, print media, magazines, or other forms of electronic or non-electronic advertising, media, or communications; on or in loan or financing requests or related communications to actual or prospective lenders, financial institutions, investors, or others; on or in leasing documents, materials, or communications to actual or prospective tenants, brokers, or others; on or in design or pre-design drawings, plans, elevations, or renderings; on or in any submission to any planning, zoning, or land use commission, board, or authority, or to any other governmental or regulatory body or entity; on or in communications, contracts, or other materials used in connection with any actual or prospective purchase of, sale of, or option to purchase or sell, any real property or real-estate related services, or the actual or proposed development of, or construction of buildings, structures, or other improvements on, any real property.

Additionally, and for further avoidance of doubt, it shall not be a defense to a violation of this Order that any services or other acts prohibited by this Order are performed, or are being performed, for the benefit, or on behalf, of Defendant's principal, John Dewberry, or any related or affiliated companies or entities under his control in whole or part.

It is further **ORDERED** that, pursuant to 15 U.S.C. § 1116(a), Dewberry Group must file with this Court and serve on Dewberry within thirty (30) days after entry of this Order and its service upon Defendant a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction ordered herein.

It is further **ORDERED** that any damages or other relief that may be awarded to Dewberry upon the conclusion of the trial of this matter shall be in addition to and not precluded by the injunctive relief set forth in this Order.

It is **SO ORDERED**.

May 6, 2021
Alexandria, Virginia

Liam O'Grady
United States District Judge